**M. D. PARSON, Appellant,**

**v.**

**Louise PARSON et al., Appellees.**

**No. 16599.**

Court of Civil Appeals of Texas.

Fort Worth.

Jan. 22, 1965.

Rehearing Denied Feb. 12, 1965.

Peery, Wilson & Jameson, and James W. Jameson, Wichita Falls, Brown, Kronzer, Abraham, Watkins & Steely, and W. James Kronzer, Houston, for appellant.

Mock, Banner & McIntosh, and Jack Banner, Wichita Falls, Attorneys for appellee, Louise Parson.

Nelson & Sherrod, and Stan Carter, Wichita Falls, for appellee, Texas Employers' Ins. Assn.

MASSEY, Chief Justice.

 Texas Employers' Insurance Association became a "stakeholder" in the trial court. It admitted its liability for the payment of "death benefits" under the Texas Workmen's Compensation Act, in a "lump sum", and deposited the amount thereof. There is some doubt as to whether it was made a party on the appeal. No point of error raises any contention against it. In order to settle the question it moved to have any appeal as against it dismissed. The motion is granted. We deny the "ad-ditional" attorney's fees for which Texas Employers' Insurance Association prays because of the circumstances which caused it to consider that there was a necessity to seek this action. This Court's authority in the case is appellate only.

Disposition of this case is simplified if the trial court be held to have been correct that Louise Parson was legally the wife of the deceased Robert Parson. Under the record made below there remained no issue of fact to be tried, hence, the case was proper to be resolved on motion for summary judgment.

Circumstances of the relationship between Louise Parson and said deceased were such that presumptions to be indulged were that from and after the date they participated in a ceremony purporting to celebrate their marriage to one another, on August 2, 1952, they were husband and wife, each constituting the lawful spouse of the other.

This presumption is controlling in the instant litigation, if not positively established, as applied to the deceased. There was no impediment to his lawful contracture of a marriage on August 2, 1952, and he did engage upon such in obtaining a license to marry Louise and participating in the ceremony whereby an authorized official declared that he and Louise were thenceforth husband and wife.

Were only a portion of the record considered there would have been a question whether the same might be said as applied to Louise, and the initial presumption of the lawfulness of her second marriage to the deceased might have been successfully rebutted so as to create an issue of fact, were we thereto confined. Fowler v. Texas Exploration Co., 290 S.W. 818 (Galveston Civ.App., 1927, error refused). It was positively established that prior to the date of the marriage ceremony of Louise and the deceased she had participated in a marriage ceremony whereby she was purportedly wed to one John Wesley Sessums. Date there-

of was January 10, 1946. Of this union, or purported union, two children were born. Louise and John Wesley Sessums parted on January 3, 1949, never thereafter cohabiting nor holding themselves out as husband and wife.

When we consider all of the record and evidence we find it conclusively shown that as applied to the marriage ceremony on January 10, 1946, there was no lawful inhibitory impediment to the entry into a valid marriage by Louise. Fowler v. Texas Exploration Co., supra. Not so as applied to John Wesley Sessums. The evidence conclusively shows that he had entered upon what is sometimes termed a "war marriage" during World War II. In England he had on June 25, 1945, under authority of a license obtained for the purpose, participated in a ceremony whereby an authorized official effectively united Sessums and his "war bride" by matrimonial bonds.

It is readily observed, therefore, that John Wesley Sessums, a man already married, was not qualified to lawfully become the husband of Louise when he "went through" the ceremony purporting to make him such on January 10, 1946. It has already been mentioned that Louise was, at that time, qualified to marry. In Texas, however, under the common law long ago adopted as controlling in such matters, it is essential to the legality of a marriage that neither the woman who marries a husband nor the man who marries a wife have a living spouse to whom he or she is then lawfully married. If such a marriage be attempted it is void *ab initio* and as to both parties. See 93 A.L.R. 345 (supplemented at 144 A.L.R. 747), Anno.: "Validity of marriage celebrated while spouse by former marriage of one of the parties was living and undivorced * * *."; 4 A.L.R.2d 542, Anno.: "Cohabitation of persons ceremonially married after learning of facts negativing dissolution of previous marriage of one, as affecting right to annulment"; 55 C.J.S. Marriage § 17, Subsisting Marriage, p. 831. As stated in 38 Tex.Jur.2d

60, "Marriage", § 24, "Subsequent Marriages" : "The Penal Code forbids the marriage of one who has a husband or wife living. (Penal Code, Arts. 490 and 490a.) A marriage by such a person is made a felony, and the marriage itself is void." (Authorities cited.) See also 35 Am.Jur. 271, "Marriage", § 148, "(Prior Marriage) Generally".

And when such a purported marriage takes place it is absolutely void, not merely voidable. Prior marriage does not constitute that character of impediment which renders possible the subsequent ratification of the marriage contract, effecting thereby the validity *ab initio* of a marriage of the parties,—as, for example, a person who was insane at the time the contract was entered into. See Simpson v. Neely, 221 S.W.2d 303 (Waco Civ.App., 1949, error refused); 35 Am.Jur., p. 212, "Marriage", § 46 "Unlawful or Irregular Marriage as Void or Voidable". We take occasion to note that in the case before us we are not concerned with the rights of anyone as a "putative" spouse of another

There are instances where, even on direct attack, the burden of proof to establish that a marriage was void *ab initio* (as distinguished from voidable) lies upon the party contending that it is such. We are not troubled therewith here. The case reaches us on an appeal from summary judgment, a proceeding in which any determination as to which of the parties would carry the burden of proof in a trial on the merits is wholly immaterial.

Neither are we troubled by the complicated type of situation where a man and woman continue to live together as husband and wife,—though originally their marriage was void because one had a living spouse at the time of the celebration of their purported marriage,—after such spouse has either died or obtained a divorce. Although the "war bride" of John Wesley Sessums did obtain a divorce from him, she did not do so during the period Louise was living with him. The "war bride" did not obtain her

divorce decree until June 20, 1951. Said date was over one year after Louise separated from him.

■ Therefore when the entire record is taken into consideration it becomes apparent that Louise, having never been the legal wife of any other person, and not subject to any other disqualification, was fully competent to and did on August 2, 1952, contract and consummate a valid marriage with Robert Parson, since deceased. That valid relationship continued and was in full force and effect on the subsequent date of his fatal injury, concededly sustained while he was within the scope and course of his employment.

The Texas Employers' Insurance Association, compensation insurance carrier for the deceased's employer, owes the workmen's compensation death benefits to Louise, as the widow of the deceased, and not to any other person whose legal position might entitle him to receive such benefits if the deceased had not died with a lawful widow surviving. This was the holding and judgment of the trial court, which we affirm.

During the period following January 3, 1949, the date John Wesley Sessums and Louise finally separated, and prior to August 2, 1952, when Louise married Robert Parson, she instituted divorce proceedings in the State of California. In her complaint she alleged in paragraph II thereof, as follows: "That plaintiff and defendant were married on the 10th day of January, 1945, at Lamesa County of Dawson, State of Texas, and ever since the said time have been and now are husband and wife." The petition was signed, under oath, by Louise, as Cleo Louise Sessums. Therein she swore: "That she is (was) the plaintiff in the above entitled action; that she has read the foregoing COMPLAINT FOR DIVORCE and knows the contents thereof; that the same is true of her own knowledge, except the matters therein stated upon her·

information and belief, and that as to those matters she believes it to be true."

The divorce proceedings in California were never completed. No decree was entered divorcing Louise from Sessums. In view of the averments, under oath, of the petition for divorce, it is contended that Louise is judicially estopped to testify that she was never the legal wife of Sessums during the period between January 10, 1946 (or 1945) and January 3, 1949. In other words, it is asserted that Louise, having in the course of prior judicial proceedings taken the position, under oath, that at a material time she was the lawful wife of John Wesley Sessums, in an attempt to obtain an advantage pursuant thereto, may not be heard afterward to maintain a contrary position in the absence of proof that the averment was made inadvertently, or by mistake, fraud, or duress. See Long v. Knox, 155 Tex. 581, 291 S.W.2d 292 (1956); 22 Tex.Jur.2d 689, "Estoppel", § 18, "Judicial estoppel".

■ Louise's testimony on the proceedings from which the instant appeal is taken is to the effect that at the very time she signed, swore to, and filed the divorce petition in California, she had been informed that Sessums had a living spouse in England to whom he had been married before he purportedly wed her in 1946. Indeed, she swore that such was the reason she separated from him on January 3, 1949. Yet do we believe and hold that the circumstances fail to present a situation ruled by the doctrine of judicial estoppel. Furthermore, in 35 Am.Jur., p. 213, "Marriage", § 48, "Estoppel to Assert Invalidity", it is stated: "The general rule as to estoppel arising from the marriage relation is that where a marriage is shown to be void, neither of the parties nor his or her representatives can, by any acts, be estopped from denying the voidness of the marriage * * *."

Judgment is affirmed.