Clifford X. PHILLIPS aka Abdullah Bashir, Appellant,

v.

The STATE of Texas, Appellee.

No. 69064.

Court of Criminal Appeals of Texas, En Banc.

Oct. 16, 1985.

Rehearing Denied Dec. 18, 1985.

Kristine C. Woldy, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. and Winston E. Cochran, Jr., Don Stricklin and George Lambright, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

MILLER, Judge.

This is an appeal taken from a conviction of capital murder. V.T.C.A. Penal Code § 19.03. The death penalty was imposed after the jury answered affirmatively the special issues submitted under Art. 37.071, V.A.C.C.P. Appellant brings nineteen grounds of error before this Court. The sufficiency of evidence presented to support the verdict and sentence is not contested. We affirm the conviction.

In his first ground of error, appellant contends that the trial court erred in denying appellant's motion for change of venue. The record reflects that appellant filed a written pre-trial motion for change of venue, with three supporting affidavits attached. The State filed its response to appellant's motion, with several controverting affidavits attached. The trial court held a hearing on the matter and witnesses for both appellant and the State testified. Four witnesses testified on appellant's behalf and stated that they had heard of the case, had heard others discuss the case, and believed that appellant could not receive a fair trial in Harris County. Additionally, appellant introduced articles printed in both the *Houston Post* and the *Houston Chronicle* concerning the case. Each newspaper printed approximately two dozen articles. Several witnesses were called by the State, who testified that although they had heard about the case, they believed that appellant could receive a fair trial in Harris County. The trial court overruled appellant's motion.

Certainly, the question whether to grant a defendant's request for a change of venue because of inflammatory or prejudicial publicity is one of constitutional dimension. *Bell v. State*, 582 S.W.2d 800 (Tex.Cr.App.1979). A change of venue is the remedy to jury prejudice resulting from widespread inflammatory news coverage and is available to assure an accused a fair trial when extensive news coverage has raised substantial doubts about obtaining an impartial jury. *Henley v. State*, 576 S.W.2d 66 (Tex.Cr.App.1978), at 71.

When a trial court must decide whether to grant a motion for change of venue, the applicable test is whether outside influences affecting the community's climate of opinion as to a defendant are inherently suspect. *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1960); *Banks v. State*, 643 S.W.2d 129 (Tex.Cr.App.1982); *Henley*, supra; *Adami v. State*, 524 S.W.2d 693 (Tex.Cr.App.1975). Absent a showing by the defendant that there is such prejudice in the community that the likelihood of obtaining a fair and impartial jury is doubtful, however, the trial judge does not abuse his discretion by denying a motion for change of venue. *Nethery v. State*, 692 S.W.2d 686 (Tex.Cr.App.1985), at 694 citing *Ussery v. State*, 651 S.W.2d 767 (Tex.Cr.App.1983) and *James v. State*, 546 S.W.2d 306 (Tex.Cr.App.1977).

Simply because a case is publicized in the news media does not by itself establish prejudice or require a change of venue. *Freeman v. State*, 556 S.W.2d 287 (Tex.Cr.App.1977), *cert. denied*, 434 U.S. 1088, 98 S.Ct. 1284, 55 L.Ed.2d 794 (1977) and cases cited at 297. As was stated in *Eckert v. State*, 623 S.W.2d 359 (Tex.Cr.App.1981), at 363, "Clearly, ... [the] standard does not require that jurors be totally ignorant of the facts and issues." Rather, the publicity about the case must be pervasive, prejudicial and inflammatory. *McManus v. State*, 591 S.W.2d 505 (Tex.Cr.App.1979); *Demouchette v. State*, 591 S.W.2d 488 (Tex.Cr.App.1979); and *Bell*, supra.

██ We have examined the newspaper articles introduced at the hearing and find them to be "fair, accurate and designed for the purpose of informing the public of current events." See *id.* at 810 and cases cited therein. Appellant has failed to meet his burden of showing that there existed in the mind of the community so great a prejudice against appellant that he was deprived of a fair and impartial trial. See *id.*

██ In addition to the newspaper articles, the State and appellant presented witnesses who testified that appellant could or could not, respectively, receive a fair trial. Given that the trial court was the sole trier of fact at the venue hearing, appellant has failed to demonstrate that the court abused its discretion in resolving the venue issue against appellant. See also *Bell*, supra at 811 and cases cited therein.

██ Moreover, the record reflects that although the jurors had heard or read of the case, they stated that they would try the case strictly on the evidence before them. See *VonByrd v. State*, 569 S.W.2d 883 (Tex.Cr.App.1978), *Adami*, supra; and *Freeman*, supra. When all of the evidence is considered we find that the trial court did not err by denying appellant's motion for change of venue. Appellant's first ground of error is overruled.

In his second ground of error, appellant contends that the trial court erred in denying his challenge for cause to venireman Don Jackson. The record reflects the following discussion during the voir dire examination:

"Questions by [Defense Counsel]: I'm just asking, can you conceive of a situation in which you would find that the victim of a robbery provoked this robber in any way, shape or form?

"A. No.

[Appellant's counsel then challenged Mr. Jackson for cause. The trial court permitted the State's attorney to question Mr. Jackson prior to ruling on appellant's challenge.]

"Questions by [Prosecutor]: Again, that's why we are only addressing this issue in determining whether you are going to kill him or give him life. That's all we are talking about. Does he die or does he live in prison. That's the only thing this issue will answer.

"A. You are asking me could I consider it?

"Q. Yes, sir. Could you consider it and in a proper case answer this question no, even though you knew it was going to mean the defendant was going to get life? A proper case is whatever you say it is.

"A. Yes.

[The trial court then overruled appellant's challenge for cause. Appellant's counsel was allowed to continue questioning Mr. Jackson.]

"Questions by [Defense Counsel]: Could you ever find—could you ever think of a proper case—or in a proper case in which you might say yes, the robber's killing the victim was understandable? Not legal: not right; understandable.

"A. Robber killing somebody understandable?

"Q. Yes. In response to some provocation by that victim.

"A. No, I don't.

"Q. Can you conceive in a proper case—could you conceive of a robbery [sic] killing his victim? The victim of a robbery as being reasonable?

"A. No.

[Defense Counsel]: I would challenge.

[At this time, a discussion was had off the record. Thereafter, the State's attorney stated that he accepted the juror. Defense counsel exercised a peremptory challenge and Mr. Jackson was excused.]"

██ The trial court would not have erred by excluding the prospective juror. Certainly under Art. 35.16(c)(2), V.A.C.C.P., a veniremember may be challenged for cause if he or she has a bias or prejudice against any of the law applicable to the case. *Smith v. State*, 513 S.W.2d 823 (Tex.Cr.App.1974). See also *Martinez v. State*, 588 S.W.2d 954 (Tex.Cr.App.1979). But, we must accord due deference to the decision of the trial court given its position to gauge the prospective juror's sincerity and

demeanor. *Bird v. State*, 692 S.W.2d 65 (Tex.Cr.App.1985), citing *Wainwright v. Witt*, —— U.S. ——, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). See also *Franklin*, supra.

■■■ In this case although the venireman initially said, by answering "no", that he could not conceive of a case in which he could find that the victim provoked the robber, he later said, by answering "yes", that he could conceive of a case where the killing by the robber was not unreasonable in response to provocation by the deceased, as contemplated by Art. 37.071, supra. We find that under the testimony before us, the trial judge did not err in holding that the prospective juror was not disqualified on the basis of his bias for or against the applicable law. C.f. *Franklin v. State*, 693 S.W.2d 420 (Tex.Cr.App.1985), *Hawkins v. State*, 660 S.W.2d 65 (Tex.Cr.App.1983), and *Bodde v. State*, 568 S.W.2d 344 (Tex. Cr.App.1978).

■■■ As to any error resulting from the questioning of the venireman after the prosecutor had "rehabilitated" him, we find that appellant has failed to preserve error on the ground urged. This further questioning concerned whether a killing was "understandable? Not legal: not right; understandable" and "reasonable." We are unable to discern the relevancy of any answer to such questions. Moreover, when appellant challenged the prospective juror for the last time, he did nothing to clear up the matter by, for instance, stating the ground for the challenge by alleging some fact which rendered Jackson incapable or unfit to serve under Art. 35.16(a), V.A.C. C.P. We are constrained to conclude that this portion of the record of Jackson's voir dire is confusing, vague and unintelligible to the extent that the grounds for the challenge cannot be determined. We are therefore unable to say that the grounds now raised comport with the challenge made at trial. Thus, no error is preserved. *Hodge v. State*, 631 S.W.2d 754 (Tex.Cr. App.1982); *Vanderbilt v. State*, 629 S.W.2d 709 (Tex.Cr.App.1981); *Crocker v. State*, 573 S.W.2d 190 (Tex.Cr.App.1978). Appellant's second ground of error is overruled.

In his third ground of error, appellant contends that the trial court erred in denying appellant's challenge for cause to venireman Gary Roan. The record reflects the following testimony during the State's examination of this prospective juror:

"Q. Do you remember the fact that this particular defendant was arrested or just a defendant was arrested?

"A. A defendant. I assume this is the man. I mean, there was somebody arrested. I remember that. I remember—what caught my eye was the woman got killed, and they stole her car and tried to burn the car. I remember that. I'm in the auto parts business. So—

"Q. Do you, have you ever seen this defendant before to your recollection, either on the television or—

"A. He looks a lot like the man on TV. I assume he's the man on TV that was arrested, you know, that they showed on TV being arrested.

"Q. At the time that you saw it on television, did you hear any of the stories that went with it about what was said?

"A. Yeah, there was, about she was working late and her body was found the next day. I remember that, and her car was found the next night. I didn't make the connection until you brought up the Alley Theatre. Now it's come back. I remember it.

"Q. During the time that you may have heard, read or seen something, did you hear about any statement made by any person, confession or a statement or anything of that nature?

"A. It seems like—I don't know. A confession, I can't say if I remember anything about a confession. I remember something about he had been convicted before about a murder, I think. I remember that or something had happened about a murder before.

"Q. Do you know if—

"MR. MOCK: Your Honor, we challenge.

"THE COURT: That's overruled at this point.

"MR. MOCK: Yes, sir.

"THE WITNESS: There may have been a confession. I don't remember, you know. I didn't follow it that closely.

"Q. [By Mr. Stricklin] All right, sir. But having seen these things and now recalling them or heard these things and now recalling them, based on your recollection now, did you form an opinion or have you an opinion today as to the guilt or innocence of this defendant?

"A. The only opinion I've got is obviously y'all feel like he's the man or you wouldn't have arrested him. I feel like probably you've got enough on him to arrest him, but I don't know if he's guilty or innocent. I can't say. I don't know.

"Q. All right. So even though you have seen these things, you have not formed an opinion as to his guilt or innocence as he sits here today?

"A. Right."

Later during questioning by appellant's attorney, Mr. Roan stated that he presumed appellant to be innocent, he would hold the State to its burden of proof beyond a reasonable doubt, and that he would not consider any publicity when reaching a verdict in the case. Appellant's counsel did not re-urge a challenge to the juror or exercise a peremptory strike. Mr. Roan was then seated on the jury.

■ Appellant now contends that despite Mr. Roan's clear statements to the contrary, his knowledge of the case rendered him unfit for jury service under Art. 35.16(a)(9), V.A.C.C.P. Given the testimony before us, we find that the trial court did not err in overruling appellant's challenge. See *McManus,* supra, and *Taylor v. State,* 420 S.W.2d 601 (Tex.Cr.App.1967). Appellant's third ground of error is overruled.

In ground of error number four, appellant contends that the trial court erred in denying appellant's challenge for cause to venireman Homer Lange. During the voir dire examination conducted by the State's attorney, Lange initially stated that "It's in my mind that [appellant] did admit doing

it." After further questioning, he stated that he would presume appellant innocent, set aside any media exposure, and base his decision solely on the facts.

When the prosecutor asked Lange whether he could disregard an illegally obtained confession if there was no other evidence, Lange stated that he did not believe that he could. Appellant's attorney then stated "We challenge, your Honor," but failed to obtain a ruling by the trial court. The State's attorney then explained the law regarding such confessions and focused upon the juror's oath and duty to follow the law. Lange then stated that he would follow the law and disregard the confession even if the defendant were required to go free.

After the State's attorney finished his questioning, appellant's attorney examined the prospective juror. After the attorney had questioned Lange about a hypothetical situation where a robber was provoked into killing his victim, he asked Lange whether he could consider the provocation reasonable. Lange responded "I don't believe I ever could do that, no, sir." Again, appellant's attorney stated "We would challenge, Your Honor."

Before ruling upon the "challenge," the trial court allowed the State's attorney to question Lange further. When asked if he could consider the provocation, Lange stated that he could consider such provocation understandable. Lange later indicated that he would look at all of the evidence, base his decision upon the evidence, and not automatically answer the third special issue "yes." The trial court then overruled appellant's "challenge."

■ Appellant now contends that the juror should have been disqualified under Art. 35.16(a)(10), V.A.C.C.P. Since no challenge on this ground was advanced before the trial court, no error is preserved. Garcia v. State, 626 S.W.2d 46 (Tex.Cr.App. 1981). Even if the ground had been advanced at trial, the testimony does not establish that Lange had "such a conclusion as to [appellant's guilt] as would influence him in finding a verdict." Art. 35.16(a)(10),

V.A.C.C.P. See *McManus,* supra, and *Taylor,* supra.

Moreover, simply because the prospective juror seemed equivocal in some responses is not, by itself, grounds for automatic challenge. See *Bird,* supra. Based upon the testimony before us, we find that the trial court did not abuse its discretion in overruling appellant's "challenge." Appellant's fourth ground of error is overruled.

In ground of error number five, appellant contends that the trial court erred in granting the State's challenge for cause to prospective juror Alfred Carroll. The record reflects the following testimony during the examination:

"Q. [By Prosecutor] ... But I'm just asking you, based on that theory, could you set it aside and make a decision on the case, disregarding the confession?

"A. I don't think so. If a man killed another person, I don't think I could, no, not knowing that he did this.

"Q. But you would know that he did it.

"A. Yes.

"Q. Because he led them to the body.

"A. Yeah, I would know that.

"Q. You would know that he killed that three year old.

"A. I would know he done this, but because it was improperly done, then I have to disregard that.

"Q. You can't think about it anymore.

"A. Can't think about it anymore. I don't think I could.

"Q. Well, now is one of those times when we have to have a firm yes or no.

"A. No.

"Q. You could not set it aside, then?

"A. No, I couldn't set it aside.

"Q. And you would then find him guilty?

"A. If in fact he did kill, yes, I would have to find him guilty. If he confessed it, said he done it, I would have to find him guilty."

Further in the prosecutor's examination, Carroll was given a hypothetical situation involving a bank-robbery where one person kills a teller, and the other person drives the get-away car. The following testimony is reflected in the record.

"Q. [By Prosecutor] ... Now it's capital murder. Now, they are both guilty of capital murder. Now they are both subject to the death penalty. Could you, in a proper case, vote for the death penalty for a non-trigger person?

"A. I have to say no because he didn't pull the trigger.

"Q. All right, sir, but you recognize what the theory of law is?

"A. Yes, but he was in on the bank robbery but he didn't murder, he didn't murder anyone.

"Q. No, he is not the one who pulled the trigger. That's why I called him the non-trigger person to make the distinction between the man standing there pulling the trigger.

"A. No, if he didn't pull the trigger, he's not the murderer, but he was in on the bank robbery, so he is a part of that bank robbery though.

"Q. Well, but could you ever find that person guilty of capital murder?

"A. No, I couldn't, because he didn't pull the trigger.

"Q. All right, sir. And even if you could find him guilty of capital murder, you could never vote for or answer those two questions in such a way that the non-trigger person would be assessed the death penalty?

"A. No, I really don't. If a guy didn't pull the trigger, this is what I'm saying. If he didn't pull the trigger, he's not the murderer.

"Q. All right, sir. And I don't have any quarrel with that, and that's what I was getting at. Your're entitled to that belief, but that would be so in each and every case of a non-trigger person. Am I correct?

"A. As far as I'm concerned, yes.

"Q. All right, sir, And that's fine."

The prosecutor then made his challenge for cause on the basis of Carroll's answers regarding confession law and parties. The trial court allowed appellant's counsel to

question Carroll. After discussing confession law, the following testimony occurred:

"Q. [Defense Attorney] . . . But the law would require you to put it out of your mind, and if there is no other evidence, return a verdict of not guilty. You may not agree with it. You may not like it, but my question is, could you follow the law?

"A. I don't agree with that at all.

"Q. I understand you're not agreeing with it, but could you follow the law?

"A. Not that aspect. If somebody was tortured. But trickery, like you're saying, if you tell me this here, I won't prosecute you. Just for conversation is one thing, but beating up is something else.

"Q. I have to get a yes or no. That's all, sir.

"A. If they killed it.

"Q. But you could not put that out of your mind and not consider it.

"A. I would.

"Q. You would consider it and not put it out of your mind?

"A. I'm saying if he was beat up or bribed, that's one thing. But if he killed a woman, he's a murderer or killed the girl, he's a murderer, however he got the information from her."

Appellant contends that the trial court should not have granted the State's challenge for two reasons. First, since the facts of this case did not involve a non-trigger person, the State was not entitled to rely upon any law regarding non-trigger persons; therefore, the State could not make a successful challenge on this ground. Second, the rules relating to inadmissible confessions are defensive and "exculpatory"; thus, the State receives no benefit from their application and should not obtain an exclusion because of a juror's inability to follow those rules.

■ Article 35.16(b)(3), V.A.C.C.P., authorizes the State to challenge for cause any venireman who has a bias or prejudice against "any phase of the law upon which the State is entitled to rely for conviction or punishment." We reject the notion that this statute limits the State to challenges based upon laws relating to the particular facts of the case on trial. No such limiting language appears in the statute, and appellant has not cited nor have we found caselaw mandating such a construction. Certainly there are theoretical limits to the laws the State is entitled to rely on and raise in the voir dire. But in this case it would be quite feasible for the defense to assert that someone else pulled the trigger. The State should not be required to anticipate the evidence in a case in order to limit challenges to the situations which are justified by those facts.

■ We further find that Carroll's testimony supported the challenge. In *Session v. State,* 676 S.W.2d 364 (Tex.Cr.App. 1984), the defendant objected to the trial court's exclusion of three jurors who indicated that they could not consider finding guilty a participant in a capital murder who did not himself kill. We held that since the veniremembers made it clear that they could not find such a person guilty, and that they could not follow the law upon which the State was entitled to rely, the trial court did not err in granting the State's challenges. Similarly, in the case at bar, Carroll indicated that he could not find such a person guilty and assess the death penalty even though the State was entitled to seek the death penalty. Thus, under the facts of this case, the trial court did not err in granting the State's challenge on the basis of Carroll's beliefs about non-trigger-persons, even though the issue never arose at trial.

We also find untenable appellant's second reason supporting his claim that the trial court erred. Appellant asserts that since the State could not benefit from the laws regarding inadmissible confessions, it could not have Carroll excluded for his inability to follow those laws. Appellant has not cited, nor have we found, any caselaw supporting his position. We have, however, found caselaw militating against his position.

In *Hernandez v. State,* 643 S.W.2d 397 (Tex.Cr.App.1983), we held that it was permissible for the State to challenge a juror

for cause based upon his inability to consider the full range of punishment and assess the minimum punishment authorized by law. See also *Chambers v. State*, 568 S.W.2d 313 (Tex.Cr.App.1978), *cert. denied* 440 U.S. 928, 99 S.Ct. 1264, 59 L.Ed.2d 484 (1979), and *Moore v. State*, 542 S.W.2d 664 (Tex.Cr.App.1976), *cert. denied* 431 U.S. 949, 97 S.Ct. 2666, 53 L.Ed.2d 266 (1977). Also, in *Smith v. State*, 683 S.W.2d 393 (Tex.Cr.App.1984), we overruled the defendant's contention that the State should not be entitled to exclusion of jurors who cannot assess the minimum punishment because the State could not be harmed by such jurors. See also *Huffman v. State*, 450 S.W.2d 858 (Tex.Cr.App.1970). It appears, therefore, that harm to the State is not a prerequisite for the exercise of a challenge for cause based upon a juror's inability to follow the law.

In the case at bar, appellant made two confessions. It is conceivable that the State may have needed to rely on one and not the other using confession law. In any event, simply because appellant could not envision a situation where such laws would benefit the State, the State is not thereby precluded from seeking exclusion of jurors who could not follow those laws. We find that the trial court did not err in granting the State's challenge for cause to venireman Carroll. Appellant's fifth ground of error is overruled.

In his sixth ground of error appellant contends that the trial court erred in overruling appellant's challenge for cause to venireman Clyde Redfern. When asked by defense counsel what he would do if he were on a jury that had convicted a defendant of committing a murder in the course of a robbery, Redfern stated that he would "have to have the death penalty" as the proper punishment. When the State conducted further examination, Redfern indicated that he would not vote automatically to impose the death penalty, but would consider the evidence. Appellant contends that Redfern's testimony shows that he held strong convictions that death would be the only punishment he could consider for a person guilty of murder in the course of robbery.

Except for the isolated statement referred to by appellant, prospective juror Redfern did not indicate that he was firmly convinced that regardless of the evidence, the death penalty would be the only appropriate punishment for capital murder. Appellant contends that the juror demonstrated the same strong convictions in favor of the death penalty exhibited by the prospective juror discussed in *Smith v. State*, 573 S.W.2d 763 (Tex.Cr.App.1978). In *Smith*, the prospective juror stated that he held strong convictions that death was the only punishment that he would consider, that he would not consider life punishment as an adequate punishment, and that he could not be swayed or persuaded from his position. The juror made his position clear throughout the voir dire examination. We find that the one remark made by the prospective juror in the case at bar, when considered with his responses as a whole, did not disqualify him. The trial court did not err by overruling appellant's challenge. Appellant's sixth ground of error is overruled.

In ground of error number seven, appellant contends that the trial court erred in overruling appellant's challenge for cause to venireman Edgar Bauer. The record reflects the following testimony:

"Q. [By Defense Counsel] Can you conceive of a situation in which you would agree that the killing of the victim of the robbery was reasonable by the robber as the question says?

"A. No.

"Q. In response to the provocation, if any, by the deceased?

"A. The question, I see any reason for him doing that? Is that what you're indicating?

"Q. No, sir. He objected when I tried to ask that.

"A. Well, let's state it where I understand it.

"Q. I'm trying.

"A. Okay.

"Q. Question No. 3, issue No. 3, you see the question here, if raised by the evidence, whether the conduct of the de-

fendant, in killing the deceased, was unreasonable in response to the provocation, if any, by the deceased.

Now, my question to you is, can you conceive of a situation in which you would answer this question no? Now, by answering it no, you are saying that the conduct of the deceased—excuse me, the conduct of the defendant in killing the deceased, was reasonable in response to the provocation, if any, by the deceased.

"A. That question, I would have to put, state in my—I can't say yes or no on that, because it's not clear to me what no or yes would mean. I know you're trying to get over to me—

.        .        .        .        .

"Q. Yes, sir. If raised by the evidence whether the conduct of the Defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.

"A. Well, what is the question? That is a statement there. What is the question? What do you want on—

"Q. The question, I believe, is asking the jury whether or not the defendant, in killing the deceased, was reasonable or unreasonable in response to or because of some provocation, if there was any provocation, by the deceased. And again, that's not my question, sir. That's something the legislature passed.

"A. I don't know. I can't answer that question the way it stands.

"MR. MARTIN: We would challenge for cause."

Thereafter, the State was permitted to question the prospective juror. The State's attorney restated the hypothetical in greater detail and asked Bauer whether he could consider the situation understandable or reasonable and answer the special issue "no." Bauer replied "yes."

In addressing this ground, we note that appellant failed to preserve error on his "challenge" since he failed to secure a ruling from the trial court. *Stevens v. State,* 671 S.W.2d 517 (Tex.Cr.App.1984). Even if some error were properly pre-

served, we find that the testimony presented indicates that the prospective juror was unable to understand the questions rather than unable to follow the law. No error is shown. Appellant's seventh ground of error is overruled.

In ground of error number eight, appellant contends that the trial court erred in overruling appellant's challenge for cause to venireman Gordon Pennington. Appellant's contention is based upon the following testimony elicited during voir dire examination by the defense:

"Q. [By Defense Counsel] You believe the confession was not voluntarily made by the defendant and I would repeat that does not necessarily mean it was beaten out of him. There are other ways to obtain something from one involuntarily. All right?

"A. Yes.

"Q. But you don't have a reasonable doubt in your mind you are convinced that the statement is not, was not voluntarily made, but you believed that it is a true statement of what happened back on the date of what happened on January the 12 or whatever the date is on the hypothetical. If that was the only evidence could you set that aside and say not guilty of this capital murder case?

"A. No. I couldn't if that was the only evidence, no.

"Q. All right, sir, if there was some other evidence to show the defendant was guilty could you set aside that confession in your mind and not consider it at all in weighing and evaluating the remaining evidence?

"A. That I could do.

"Q. If the other evidence was not enough to get there without the confession, was not enough to convince you beyond a reasonable doubt without the use and aid of the confession under the same hypothetical would you use would you then use the confession to substantiate, corroberate [sic] or add to what other evidence the State put

on knowing in your mind that it was obtained not voluntarily?

"Q. Would you use it to aid you in arriving at your decision even if there is other evidence of guilty?

"A. Knowing that that statement was not obtained voluntarily.

"Q. Voluntarily obtained yes, sir?

"A. No.

"Q. My question was so screwed up. Does that mean you would consider?

"A. I would not consider the statement.

"Q. But if it were the only evidence they had?

"A. I would have to consider it.

"Q. Even if you felt it was illegal, well, by illegally obtained, I mean not legally obtained.

"A. Yes.

"Q. You would consider it under that circumstance?

"A. I would have to."

After the preceding discussion, defense counsel challenged Pennington for cause based upon his inability to disregard an illegally obtained confession. The State was then permitted to question the prospective juror. After a lengthy explanation regarding the law on illegal confessions, the State's attorney asked Pennington whether he could return a verdict of not guilty when faced with an illegal confession. Pennington responded that he could.

Defense counsel then resumed questioning. He reminded Pennington of his earlier response, and the following discussion took place:

"Q. [By Defense Counsel] ... because you have heard it several times. All right, sir, in our hypothetical with you you get back there and you then resolve that the confession was not voluntarily given all right sir are you saying now that you can set that confession aside and not consider it in determining the guilt or innocence of the man when you already know the contents of that confession?

"A. If the elements are not met it can't be considered, am I correct?

"Q. Yes, sir.

"A. Okay.

"Q. But you already know what it says. Can you disregard that if it is a part of the State's case?

"A. All I can say is I can try to and that's an honest answer.

"Q. I am just trying—

"A. You are asking for a 'yes' or 'no,' right?

"Q. Yes, sir, I am.

"A. And I am giving you an answer.

"Q. I realize the difficulty of your answer but frankly, I, all of us are entitled to a 'yes' or a 'no'.

"A. Absolutely.

"A. Yes.

"Q. You would consider it?

"A. I would not consider it. Yes, I would not consider it if I knew that all the elements were not met. I am saying that I would throw it out.

"Q. What if it was the only evidence?

"A. Back, going back to the original question you asked me—

"Q. Same situation. It's the only evidence against the defendant.

"A. —if the law states that the jury has to have the evidence as correct, therefore, if it was involuntary, whatever, I would have to throw it out, although I wouldn't agree with it, but I would have to throw it out.

"Q. So you would then say by your verdict 'not guilty' to in a case in which the man had confessed to killing the ten year old girl?

"A. Yes.

"Q. I mean, that's what we are talking about.

"A. Yes, in the hypothetical case, I would have to. But again, under much constraint, I am sure.

"Q. Excuse me?

"A. I would. It would be under quite a bit of consideration as far as I am concerned morally but if the law says it has to have these elements met, I could not determine it or use it."

Appellant failed to secure a ruling to his challenge for cause and thereby failed to preserve error. *Stevens*, supra. We will, however, consider his contentions. Article 35.16(c)(2), V.A.C.C.P., authorizes the defendant to challenge a prospective juror for cause if that juror has a bias or prejudice against any of the law applicable to the case upon which the defendant is entitled to rely. In the case at bar, a confession had been made; therefore, appellant was entitled to rely upon the laws regarding confessions.

■ Had prospective juror Pennington clearly and consistently stated that he could not disregard an illegally obtained confession, he would have been subject to a challenge for cause. See *Smith v. State*, 513 S.W.2d 823 (Tex.Cr.App.1974). When this voir dire is viewed in its entirety, however, it is apparent that after the law was explained to him, Pennington indicated that he would follow the law and disregard the confession. We conclude that Pennington was not biased against the law of the case and hold that the trial court did not err in refusing to strike him for cause. Appellant's eighth ground of error is overruled.

In ground of error number nine, appellant contends that the trial court erred in granting the State's challenge for cause to venireman Christine Littles. The record reflects the following testimony elicited during the voir dire examination:

"Q. [Prosecutor] Would you hold us to a higher burden of proof when we get to the punishment stage?

"A. To [sic] in order to determine whether somebody just has a life sentence or a death—

"Q. Yes, ma'am?

"A. Are you asking me would I have to see more proof in order for him to get death or—

"Q. Not more proof but a higher standard of proof. In other words, you said you would have to see things with your own eyes and I don't know what you mean by that. Are you talking about actually seeing the offense or what do you mean when you say see it with your own eyes?

"A. Well, the proof that you present, it has to be something—well, I use the term 'with my own eyes' but I guess to explain it so you can understand what I mean, what you show me, I have to feel that's actually proof. It's something I can live with after. Well, if I make a decision, I have to be able to live with it so what I'm saying, later on, well, tomorrow or next day, I can say, 'Well, he did prove it to me.' Well, I use the term 'see it with my own eyes.' I know I can't see the actual event. I kow I can't see that, but to me, the proof has to be something where I can actually visualize it. I have to feel it. I have to feel what you are saying is true.

"Q. Well, I have to prove to you beyond a reasonable doubt in both the guilt or innocence stage and the answer to those two questions should be yes.

"A. Uh-huh.

"Q. But I don't have to prove it to you beyond all doubt. I can't prove anything to you beyond all doubt and that's what I'm wondering is what standard are you going to hold me to. In other words, how far or what am I going to have to prove to you beyond all doubt or beyond a reasonable doubt?

"A. Beyond all doubt because that's the only way I can live with myself afterward was to know there was no other alternative.

"Q. So I would have to prove to you beyond all doubt those two questions should be answered yes before you can answer yes?

"A. Yes.

"Q. I'm not misunderstanding you, am I?

"A. No. Like I said, I have to live with what I do and only way I can do it is to know that what you showed me was, it has to be beyond all doubt.

"Q. Thank you, ma'am.

"MR. STRICKLIN: Your, Honor, the State would reurge its motion.

"MR. MOCK: If I may, Your Honor?

"THE COURT: No, sir. Miss Littles, you understand the proof of the case in the State of Texas is beyond a reasonable doubt. You understand that?

"MISS LITTLES: Uh-huh.

"THE COURT: Answer outloud so the court reporter can take it down, please.

"MISS LITTLES: Yes.

"THE COURT: We have got to understand your testimony. You told the prosecutor that you have to have proof beyond all doubt. Is that right?

"MISS LITTLES: Yes.

"THE COURT: Is that right? Sustain the objection. Step down."

■ It is well settled that the trial court may impose reasonable restrictions on the exercise of the voir dire. *O'Bryan v. State*, 591 S.W.2d 464 (Tex.Cr.App.1979), and cases cited therein at 474; *Bodde v. State*, 568 S.W.2d 344 (Tex.Cr.App.1978), *rehearing denied* 440 U.S. 968, 99 S.Ct. 1520, 59 L.Ed.2d 784 (1979). The trial court may cut off duplicitous questioning in order to curb the prolixity of what is usually the lengthiest part of a criminal trial. *O'Bryan,* supra at 474, citing *Bodde,* supra. Moreover, if the prospective juror states his or her position clearly, unequivocally, and without reservation, the trial court does not err in refusing to permit further questioning. *White v. State,* 629 S.W.2d 701 (Tex.Cr.App.1981) and cases cited therein at 706. See also *Burns v. State,* 556 S.W.2d 270 (Tex.Cr.App.1977), *cert. denied* 434 U.S. 935, 98 S.Ct. 422, 54 L.Ed.2d 294 (1977).

■ In the case before us, the prospective juror stated clearly that she would hold the State to a higher burden of proof beyond all doubt. She did not waiver from this position even when the trial court questioned her. Given the trial court's opportunity to observe her, question her, and hear her answers, the trial court did not err in refusing to permit appellant to question her further. See *Huffman,* supra at 860. Although we do not encourage this prac-

tice, under the facts of this case, no error is shown. Appellant's ninth ground of error is overruled.

■ In ground of error number ten, appellant contends that the trial court erred by failing to swear in the respective jury panels or panelists prior to individual voir dire. Appellant concedes that there is no evidence in the record indicating that the proper oaths were not administered, and that a silent record mandates a presumption on appeal that the jury was properly empaneled and sworn under Art. 44.-24(a), V.A.C.C.P. Appellant contends that severity of the penalty inflicted in this case should warrant an exception to the presumption of regularity. The Legislature did not see fit to create such an exception to Art. 44.24(a), V.A.C.C.P., nor do we. Appellant's tenth ground of error is overruled.

In appellant's eleventh ground of error, he contends that the trial court erred in making no written findings of fact with regard to the hearing held outside the presence of the jury concerning the voluntariness of the confession. This ground of error has been rendered moot since the trial court has filed written findings of fact.[1] Ground of error number eleven is therefore overruled.

In ground of error number twelve, appellant contends that the trial court erred in failing to suppress appellant's confession because the interrogation continued after appellant indicated that he wanted it to stop. The trial court made written findings of fact and conclusions of law regarding the voluntariness of appellant's confession. Because the findings of fact are necessary for our disposition of this case, a summary of those facts follows.

Appellant was arrested on February 9, 1982 in Los Angeles California by Houston Police Detectives S.J. Garza and Larry Webber. The officers were assisted by several local officers. Appellant was ar-

---

1. On submission, this appeal was abated because the trial court failed to file its findings of facts and conclusions of law required by Art. 38.22, V.A.C.C.P., and *Jackson v. Denno,* 378 U.S.

368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). A supplemental transcript was later filed reflecting the findings and conclusions, whereupon the appeal was reinstated.

rested on a felony warrant alleging that he had committed arson. Immediately following appellant's arrest, Detective Garza gave appellant the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and Art. 38.22, V.A.C.C.P. Appellant acknowledged that he understood the warnings. He was then transported to the downtown headquarters division of the Los Angeles Police Department.

On his arrival, appellant was again given the required warnings. He asked why he was being arrested and Detective Garza told him that he was under arrest for arson. He was questioned by Detective Garza for approximately one and one-half hours and was then returned to his cell.

The next morning, Detectives Garza and Webber checked appellant out of his cell and took him to an interview room in the jail. Detective Webber read appellant his *Miranda* warnings before the interview began. During this interview, the detectives talked to appellant about his life in New York, Houston and Los Angeles. At approximately 11:45 a.m., a Los Angeles officer interrupted, and told the detectives that appellant had to leave at that time for lunch. Detective Garza asked appellant whether he wanted to discuss his activities in Houston and appellant stated that he "wanted a little time" to think about it. Appellant was then taken away for lunch and returned to his cell.

At approximately 2:00 p.m., Detective Garza escorted appellant to the interview room, read appellant his *Miranda* warnings, and began to question appellant about his actions in Houston. Appellant stated that he wanted "guarantees" before he would say anything else. Garza stated that he had no power to make any guarantees and reiterated that anything appellant said could be used against him in court.

After thirty minutes of discussion, Garza asked appellant whether he had killed Iris Siff and appellant nodded his head. Garza asked appellant how he had killed her and appellant replied that he had choked her.

Garza presented appellant with a "Statement of Person in Custody" form and asked appellant to read the printed portion at the top of the page. Appellant acknowledged that the printed statement at the top of the page comported with what Garza had read to him.[2]

At approximately 4:30 p.m., Detective Garza began typing appellant's statement. No other officers were present. At approximately 5:20 p.m., a Harris County Assistant District Attorney arrived with food and cigarettes for appellant. Garza finished typing the five page statement at approximately 6:40 p.m.

Based upon the preceding facts, the trial court entered the following finding of fact:

"At no time did [appellant] ever tell Detective Garza that he wanted to remain silent. At no time did [appellant] tell Detective Garza that he did not understand that any statement he made may be used in evidence against him in court. At no time did [appellant] ever tell Detective Garza that he wanted to have a lawyer present to advise him prior to or during any questioning. At no time did [appellant] ever tell Detective Garza that he ... was unable to employ a lawyer. At no time did [appellant] ever tell Detective Garza that he wanted to terminate the interview."

Appellant contends that since the interrogation continued after appellant's statement that he wanted it to stop, the trial court erred in admitting appellant's confession. Appellant does not take issue with the trial court's findings of fact. Rather, appellant contends that the court erred in concluding that based upon the facts of the case, appellant's waiver of his right to remain silent was knowingly and voluntarily made.

■ The determination of whether a waiver has been knowingly or voluntarily

---

**2.** The printed matter at the top of the form contained a recitation of the standard statutory warnings and a statement that the person mak-

ing the statement knowingly, intelligently and voluntarily waived his rights.

waived must be made on a case by case basis. *Barton v. State*, 605 S.W.2d 605 (Tex.Cr.App.1980), and cases cited therein at 607; *McKittrick v. State*, 541 S.W.2d 177 (Tex.Cr.App.1976). We are not at liberty to disturb the trial court's findings of fact if they are supported by the record. In that event, we address only whether the trial court improperly applied the law to those facts. *Faulder v. State*, 611 S.W.2d 630 (Tex.Cr.App.1980), *cert. denied* 449 U.S. 874, 101 S.Ct. 215, 66 L.Ed.2d 95 (1980), op. on State's motion for rehearing; *Sinegal v. State*, 582 S.W.2d 135 (Tex.Cr. App.1979). *Miranda*, supra, requires that once warnings have been given, if a defendant indicates in any manner at any time that he wishes to remain silent, the interrogation must cease. *Id.*, 86 S.Ct. at 1602. In *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), the Supreme Court limited the broad language of *Miranda*, supra, and stated "the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.'" *Michigan v. Mosley*, 96 S.Ct. at 326. See also *Hearne v. State*, 534 S.W.2d 703 (Tex.Cr.App.1976).

The first question we must address is whether appellant "in any manner" invoked his right to remain silent. When appellant was first asked whether he wanted to discuss the offense, he stated that he "wanted a little time" to think about the matter. Prior to this statement, appellant had been given his Miranda warnings on three separate occasions. We conclude that this request was an invocation of appellant's right to remain silent at that time.

The second question we must address is whether appellant's request was scrupulously honored. Immediately after appellant indicated that he did not wish to discuss the matter with Garza, he was taken away from the interrogation room, given lunch, and returned to his cell. Later that afternoon (after "a little time"), Garza took appellant back to the interview room and repeated the *Miranda* warnings. Appellant did not indicate that he did not want to discuss the matter, but rather stated that

he wanted guarantees before he would talk. Garza stated that he could make no guarantees and repeated the warning that anything appellant may say could be used against him. Thereafter, appellant gave his confession. We note that appellant does not take issue with the trial court's finding of fact that appellant did not tell Garza that he wanted to remain silent or consult with an attorney.

■ We find that on the facts of this case, appellant's invocation of his right to remain silent was scrupulously honored. The questioning ceased immediately after appellant's request for "a little" time. He was removed from the interview room and not approached until two hours later. When Garza met with appellant, he reminded appellant of his right to remain silent. Appellant did not indicate that he needed more time or that he did not want to talk, but rather immediately engaged in conversation and sought to obtain "guarantees" from the officers before confessing. Thus, no violation of appellant's rights occurred when Garza resumed questioning. See also *McKittrick*, supra. Cf. *Bush v. State*, 697 S.W.2d 397 (Tex.Cr.App.1985); and *Faulder*, supra. Appellant's twelfth ground of error is overruled.

■ In his thirteenth ground of error, appellant contends that the trial court erred in admitting appellant's confession because it was involuntary. Appellant argues that since he was not informed that he was the target of a capital murder investigation, his confession was not made voluntarily. In *Elliott v. State*, 444 S.W.2d 914 (Tex.Cr.App.1969), we held that informing a defendant that he had been charged with an offense different from the charge ultimately filed against him did not render his confession inadmissible. Also, in *Sanchez v. State*, 454 S.W.2d 210 (Tex.Cr.App. 1970), the defendant was arrested for burglary and attempted murder. On appeal, he argued that he was "not warned that he was suspected of the offense of murder with malice aforethought, and that death could be a possible punishment." *Id.* at 213. This Court held that the confession

was admissible. We find that in the case at bar, appellant's confession was similarly not rendered unknowing or involuntary because he was not told that he was the target of a murder investigation. Ground of error number thirteen is overruled.

In ground of error number fourteen, appellant contends that the trial court erred in overruling appellant's objection to the prosecutor's misstatement of evidence. During the prosecutor's final argument during the guilt/innocence stage of trial, he said:

> "Once again the medical examiner testified on the wrist there appeared to be the impression of a chain or some kind of chain around the wrist. That was taken. *Once again he leaves fingerprints at the scene for you. Not only does he do that—.*"

(Emphasis in appellant's brief.) Appellant's counsel objected, stating that the prosecutor's remark was a misstatement of the record. The trial court overruled the objection. The record indicates that Detective Webber found that the scene of the crime was wiped clean of fingerprints. Thus, the police did not find any fingerprints at the scene which matched appellant's.

The State contends that the prosecutor's reference to "fingerprints" was not meant to be taken literally, but rather referred figuratively to appellant's link to the scene of the crime. During the trial, the medical examiner testified that an impression of a chain was found on the victim's wrist. Appellant's confession stated that he had taken a gold chain from the crime scene. Appellant's counsel tried to convince the jury that appellant had not been shown to be the perpetrator of the offense, and emphasized the State's lack of evidence on that issue. Therefore, according to the State, the prosecutor used the term "fingerprints" as he would have used the term "signature" to respond to appellant's contentions and link him to the scene of the crime.

▬ It is well settled that there are four primary areas of permissible prosecu-

torial jury argument: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Cannon v. State*, 668 S.W.2d 401 (Tex.Cr.App.1984); *Denison v. State*, 651 S.W.2d 754 (Tex.Cr.App.1983); *Alejandro v. State*, 493 S.W.2d 230 (Tex.Cr.App. 1973). Had the prosecutor referred to matters outside of the record, the argument would have been improper. The trial court, however, did not interpret the remark to be outside of the area of proper jury argument, and neither do we. We find acceptable the State's contention that the term was not intended to refer to non-existent evidence.

▬ Even if the argument had been improper, it would not constitute reversible error unless, in light of the record as a whole, it was extreme or manifestly improper, violative of a mandatory statute, or injected new facts, harmful to the accused, into the trial proceedings. *Cannon*, supra at 404 citing *Todd v. State*, 598 S.W.2d 286 (Tex.Cr.App.1980). See also *Kerns v. State*, 550 S.W.2d 91 (Tex.Cr.App.1977). When the entire argument is considered, the prosecutor's remarks did not rise to the level of reversible error. Appellant's fourteenth ground of error is overruled.

In ground of error number fifteen, appellant contends that the trial court erred in finding no marital relationship between appellant and June Bordeaux. During the punishment stage of trial, the following testimony was elicited:

> "Q. [Prosecutor] For the record would you state your name again?
>
> "A. [Witness] June Bordeau.[3]
>
> "Q. Ms. Bordeau, are you married?
>
> "A. Yes, I am.
>
> "Q. To whom?
>
> "A. William Bordeau.
>
> "Q. And where does William Bordeau live?
>
> "A. In Rodchester [sic], New York.
>
> "Q. Were you so married in November and December of 1981?

3. This spelling appeared throughout the transcript.

"A. Yes.

"Q. Were you in [sic] married in January and February of 1982?

"A. Yes.

"Q. Are you in fact still married to William Bordeau at this very moment?

"A. Yes, I am.

"Q. Were you ever married to Abdullah Bashir or Clifford Phillips?

"A. No.

.    .    .    .    .

"Q. [By Mr. Mock] Ms. Bordeau is your alleged marriage to William Bordeau a ceremonial or common-law marriage?

"A. Ceremonial.

"Q. When did that marriage take place, please ma'am?

"A. June 2nd, 1964.

"Q. And do you have any children as a result of that marriage?

"A. Four.

"Q. And where are those children, ma'am?

"A. In New York.

"Q. Do you know, ma'am, of your own knowledge whether there have been divorce proceedings by William Bordeau to divorce you at any date in the past or any pending at this point?

"A. No, I don't.

"Q. And it is your testimony that you never were divorced from William Bordeau?

"A. No. I was not ever divorced.

"Q. Okay. And you never were common-law married to Clifford X. Phillips or Abdullah Bashir?

"A. Not if I was married. I was common-law married to him. Yes. I lived with him.

"Q. Okay. Did you think you were common-law married?

"A. Yeah. That's the law.

"Q. You used his name on various occasions?

"A. Yeah, I have to use his name."

Appellant argues that under Art. 38.11, V.A.C.C.P., Bordeaux was subject to the marital privilege against testifying against appellant, and the trial court erred by permitting her to testify.

In order for the marital privilege to apply, the parties must be married to each other at the time of trial. *Robinson v. State*, 487 S.W.2d 757 (Tex.Cr.App.1972); *Bear v. State*, 612 S.W.2d 931 (Tex.Cr.App. 1981). To establish a common law marriage, the following elements must be established:

(1) an agreement by the parties to become husband and wife;

(2) a living together pursuant to such agreement, and;

(3) a holding out of each other to the public as husband and wife.

*Salayandia v. State*, 651 S.W.2d 825 (Tex. App.—Houston [14th] 1983, writ refused), at 826, citing *Chatman v. State*, 513 S.W.2d 854 (Tex.Cr.App.1974).

Before a valid marriage may exist, however, the parties must possess the legal capacity to marry and there must not be any legal impediment prohibiting the marriage contract. *Franklin v. Smalldridge*, 616 S.W.2d 655 (Tex.Civ.App.—Houston [14th] 1981, no writ), citing *Esparza v. Esparza*, 382 S.W.2d 162 (Tex.Civ.App.—Corpus Christi 1964, no writ). See also *Home Indemnity Company v. Edwards*, 488 S.W.2d 561 (Tex.Civ.App.—Fort Worth 1973, writ ref'd n.r.e.).

One legal impediment to a valid marriage is the existence of a previous marriage. *Id.* If a previous marriage has not been terminated by divorce, annulment or the death of the prior spouse, a party does not have the capacity to enter into a second marriage. *Id.* at 563 and cases cited therein. See also *Parson v. Parson*, 387 S.W.2d 764 (Tex.Civ.App.—Fort Worth 1965, writ ref'd n.r.e.). The second putative marriage is considered void *ab initio*. *Id.*

In the case before us, Bordeaux testified that she was ceremonially married to William Bordeaux prior to the time she co-habited with appellant. She initially stated that she was still married to Bordeaux, and later stated that no divorce proceedings had been taken and that she was not divorced from him. No evidence was presented to show that she was, in fact, divorced from Bordeaux.

■ Since by her own testimony, Bordeaux's prior marriage was not terminated, she did not have the capacity to enter into any marriage with appellant, common law or ceremonial. Thus, she could not have been married to appellant at the time of the trial as is required for the privilege to apply. The trial court did not err in finding that she was not subject to the marital privilege against testifying. Appellant's fifteenth ground of error is overruled.

In ground of error number sixteen, appellant contends that the trial court erred in not requiring the court reporter to record bench conferences during the trial, contrary to the pre-trial motion presented by appellant and granted by the trial court. Appellant states that frequently during the trial of the case, bench conferences were not taken down by the court reporter thereby depriving appellant of an opportunity to object.

In *Walthall v. State*, 594 S.W.2d 74 (Tex. Cr.App.1980), we stated:

"While appellant had requested that the trial proceedings be recorded, it was nevertheless incumbent on him to object if the bench conferences were not held within the hearing of the reporter or recorded by her. Appellant did not object during the trial, nor did he object to the record after being notified of its completion. See Art. 40.09, Sec. 7, V.A.C. C.P. Moreover, appellant has neither shown nor alleged that anything pertinent took place in the unrecorded bench conferences. Reversible error is not presented."

*Id.* at 81.

■ In the case at bar, appellant did not object during trial to the court reporter's failure to record the bench conferences, nor were the omissions raised in his objections to the record. Appellant also fails to allege that anything pertinent took place during the bench conferences. This case falls squarely within the holding of *Walthall*. No reversible error is shown. Appellant's sixteenth ground of error is overruled.

■ In ground of error number seventeen, appellant contends that the Texas death penalty statute, Art. 37.071, V.A.C. C.P., is unconstitutional. This statute has previously been declared constitutional in *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). Appellant's seventeenth ground of error is overruled.

■ In ground of error number eighteen, appellant contends that the trial court erred in refusing to permit appellant to waive his right to trial by jury. In this ground, appellant argues that Art. 1.13, V.A.C.C.P., is unconstitutional because it denies appellant due process and equal protection of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and by Article 1, Sec. 19 of the Texas Constitution. This statute has been found constitutional in *Short v. State*, 511 S.W.2d 288 (Tex.Cr.App.1974), *cert. denied* 420 U.S. 930, 95 S.Ct. 1132, 43 L.Ed.2d 402 (1975), and *Lane v. State*, 471 S.W.2d 854 (Tex.Cr.App.1971), *cert. dismissed* 404 U.S. 1006, 92 S.Ct. 651, 30 L.Ed.2d 655 (1971). See also *Vanderburg v. State*, 681 S.W.2d 713 (Tex.App.—Houston [14th] 1984). Appellant's eighteenth ground of error is overruled.

In his last ground of error, appellant contends that the trial court erred in denying appellant's motion for additional funds for investigation. The record shows that appellant filed a pre-trial motion requesting authorization for additional funds for investigation. The court overruled the motion.

Article 26.05, § 1(d), V.A.C.C.P., provides for the payment of "expenses incurred for purposes of investigation and expert testimony, a reasonable fee to be set by the court but in no event to exceed $500." This provision authorizes the trial court to reimburse defense counsel for investigation expenses only *after* they are incurred.[4] *Wallace v. State*, 618 S.W.2d 67 (Tex.Cr. App.1981). A trial court's decision to provide funds for expenses *before* those expenses are incurred is discretionary. *Id.*,

4. Emphasis hereinafter by the author.

at 70, citing *Eggleston v. State*, 422 S.W.2d 460 (Tex.Cr.App.1967).

In the case at bar, appellant's motion requested "a larger sum of money for purposes of investigation." Since the expenses had not yet been incurred, the trial court was not required to provide additional funds. No abuse of discretion is shown.

Moreover, it is well settled that a defendant complaining of improper action under Art. 26.05 must present and preserve evidence in the record of harm or injury. *Reed v. State*, 644 S.W.2d 479 (Tex.Cr.App. 1983); *Sanne v. State*, 609 S.W.2d 762 (Tex.Cr.App.1980), *cert. denied* 452 U.S. 931, 101 S.Ct. 3067, 69 L.Ed.2d 432 (1981); *Brasfield v. State*, 600 S.W.2d 288 (Tex.Cr. App.1980); *Freeman v. State*, 556 S.W.2d 287 (Tex.Cr.App.1977); *Cherry v. State*, 488 S.W.2d 744 (Tex.Cr.App.1972). The record must reflect some specific need for the funds, such as the need for a particular expert or witness, and in what manner the defendant will be harmed if the funds are not provided. This may be preserved by testimony presented through a bill of exceptions or an offer of proof. *Sanne*, supra.

In the case at bar, appellant singularly failed to elucidate on his general request for funds. Appellant's pre-trial motion alleged only that the funds were needed for investigation; moreover, a specific amount was not requested. At the hearing on the motion, appellant's counsel stated "There is still work to do, to be done in California. We understand there is evidence recovered in New Mexico and it can't be done at that cost, regardless as to the provisions made by the law...." We find that this record fails to demonstrate the required harm. No error is shown. Appellant's nineteenth ground of error is overruled.

The judgment of the trial court is affirmed.

CLINTON, J., concurs in the result.

TEAGUE, J., dissents to disposition of grounds of error nos. 2, 7 and 9.

TOM G. DAVIS, J., not participating.