Jason Keith RICHARDSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–87–00757–CR.

Court of Appeals of Texas,
Dallas.

June 15, 1988.

Linda L. Christiansen, McKinney, for appellant.

Tom O'Connel, J. Bryan Clayton, McKinney, for appellee.

Before STEPHENS, McCLUNG and THOMAS, JJ.

THOMAS, Justice.

Jason Keith Richardson appeals a conviction for aggravated sexual assault after a jury returned a guilty verdict and assessed punishment at life in the Texas Department of Corrections. Richardson asserts in five points of error that: (1) his motion for change of venue was improperly denied; (2) the evidence is insufficient to prove the aggravating element; (3) evidence tainted by an illegal arrest was erroneously admitted; (4) the State's violation of a discovery order requires reversal of the conviction; and (5) the trial court erred in denying his motion to restrict cross-examination of defendant. For the reasons below, we overrule all points of error and affirm the trial court's judgment.

### Change of Venue

In his first point of error, Richardson contends that the trial court erred in denying his motion for change of venue. Every defendant in a criminal case is guaranteed a fair trial by impartial jury by both the Texas and federal constitutions. Thus, due process entitles one to a change of venue when he demonstrates his inability to obtain a fair trial in the county where venue is laid. *Lewis v. State,* 654 S.W.2d 483, 484 (Tex.App.—Tyler 1983, pet. ref'd). The applicant for a change of venue has, however, a heavy burden. He must prove the existence of such prejudice in the community that the likelihood of obtaining a fair and impartial jury is doubtful. *Ussery*

*v. State,* 651 S.W.2d 767, 772 (Tex.Crim. App.1983). The decision to change venue is committed to the sound discretion of the trial court, and its decision denying change of venue will not be disturbed absent an abuse of discretion. *Nethery v. State,* 692 S.W.2d 686, 694–95 (Tex.Crim.App.1985), *cert. denied,* 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986). The court's decision regarding change of venue will not be considered an abuse of discretion when there is conflicting evidence on that issue. *Cook v. State,* 667 S.W.2d 520, 522 (Tex.Crim. App.1984).

Richardson filed a written pre-trial motion for change of venue, with three supporting affidavits attached. The State filed its response to the motion attaching several controverting affidavits. The trial court had a hearing on the matter and witnesses for both Richardson and the State testified.

Richardson presented four witnesses. Two of the witnesses, both attorneys, testified that they had heard of the case, had heard others discuss the case, and believed that Richardson could not receive a fair trial in Collin County. A reporter for the Plano Star Courier testified that his newspaper published approximately twenty-five articles concerning Richardson. Apparently, some of the articles did not concern Richardson directly, but involved bail bond procedures in Collin County. Richardson was involved tangentially in this issue because he "jumped bail" after the trial court reduced his bail from $100,000 to $7,000. The bail reduction apparently generated much controversy about bail procedures. Only three of the articles are included in the record before us. A reporter for the McKinney Courier Gazette testified that she had written three articles concerning Richardson. Only one article was admitted into evidence and included in the record on appeal. Both reporters testified that several of their newspapers' articles mentioned that Richardson was suspected in two sexual assault cases.

The State called the mayor of McKinney who testified that the Richardson case was not "a hot topic of conversation" in the county. He believed that Richardson could receive a fair trial in Collin County. Two other witnesses testified that although they had heard about the case, they believed that Richardson could receive a fair trial in Collin County. The State's last witness testified that Richardson's case was not a topic of conversation in the county, and that he had not heard about it until the district attorney asked him to testify.

After hearing this testimony, the trial court adjourned the hearing, withholding his ruling until after voir dire of the jury panel. Fifty-five prospective jurors were summoned, and the first thirty-two were questioned extensively by both parties. Six of the prospective jurors had heard about the case, two from conversations with others and four from newspapers. One of the veniremembers was excused for cause when she stated that she could not ignore what she had heard from a friend. The other questioned veniremembers stated that they would try the case strictly on the evidence before them. The trial court overruled Richardson's motion for change of venue.

■ Richardson contends that he was entitled to a change of venue because of the extensive pretrial publicity. We disagree. Simply because a case is publicized in the news media does not by itself establish prejudice or require a change of venue. *Phillips v. State,* 701 S.W.2d 875, 879 (Tex. Crim.App.1985), *cert. denied,* 477 U.S. 909, 106 S.Ct. 3285, 91 L.Ed.2d 574 (1986). The standard does not require that prospective jurors be totally ignorant of the facts and issues; rather, the publicity about the case must be pervasive, prejudicial and inflammatory. *Phillips,* 701 S.W.2d at 879; *Eckert v. State,* 623 S.W.2d 359, 363 (Tex. Crim.App.1981), *overruled on other grounds, Reed v. State,* 744 S.W.2d 112, 125 n. 10 (Tex.Crim.App.1988); *McManus v. State,* 591 S.W.2d 505, 518 (Tex.Crim. App.1979), *overruled on other grounds, Reed,* 744 S.W.2d at 125 n. 10. We have examined the newspaper articles introduced at the hearing and find them to be "fair, accurate and designed for the purpose of informing the public of current

events." *Bell v. State*, 582 S.W.2d 800, 810 (Tex.Crim.App.1979), *cert. denied*, 453 U.S. 913, 101 S.Ct. 3145, 69 L.Ed.2d 995 (1981).

Those articles which were not admitted into evidence apparently involved bail bonding procedures rather than Richardson's criminal case. In *Stiehl v. State*, 585 S.W.2d 716 (Tex.Crim.App.1979), *cert. denied*, 449 U.S. 1114, 101 S.Ct. 926, 66 L.Ed. 2d 843 (1981), the court held that a change in venue was not required when extensive publicity surrounded the defendant's federal lawsuit concerning jail conditions and only limited media attention was given to the crime itself. *Id.* at 718. Thus, Richardson has failed to show that the publicity affected the community's climate of opinion. *Phillips*, 701 S.W.2d at 879.

Moreover, the witnesses for the State and for Richardson testified that Richardson could or could not, respectively, receive a fair trial. The trial court was the sole trier of fact at the venue hearing and Richardson has failed to demonstrate that the trial court abused its discretion in resolving the venue issue against him. *Id.* at 880; *Cook*, 667 S.W.2d at 522. Further, the prospective jurors who were acquainted with the facts of the case prior to trial stated that they would base their decision upon the evidence presented and not upon outside facts. Thus, Richardson has again failed to establish an abuse of discretion. *Phillips*, 701 S.W.2d at 880; *Von Byrd v. State*, 569 S.W.2d 883, 890–91 (Tex.Crim. App.1978), *cert. denied*, 441 U.S. 967, 99 S.Ct. 2418, 60 L.Ed.2d 1073 (1979).

After reviewing all the evidence presented to the trial court, we hold that the court did not abuse its discretion in denying Richardson's motion for change of venue. Point of error one is overruled.

### Sufficiency of the Evidence

In point of error two, Richardson contends that the evidence is insufficient to support his conviction for aggravated sexual assault. Specifically, he complains that evidence of the aggravating element is insufficient. In a multicount indictment, the State alleged the following aggravating elements: 1) Richardson used and exhibited a deadly weapon, to wit: a knife; and 2) by acts and words in the presence of the complainant, Richardson threatened to cause the death, serious bodily injury or kidnapping of the complainant.

■ The court's charge to the jury did not include the deadly weapon allegation as the aggravating element. Consequently, we will examine the evidentiary support for the finding that Richardson, by words and acts occurring in the presence of the complainant, threatened to cause the death, serious bodily injury or kidnapping of the complainant.[1] The standard for appellate review of the sufficiency of the evidence is to view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Garrett v. State*, 682 S.W.2d 301, 304 (Tex.Crim.App.1984), *cert. denied*, 471 U.S. 1009, 105 S.Ct. 1876, 85 L.Ed.2d 168 (1985). Utilizing this standard, we now review the evidence in this case.

The complainant, a real estate agent, was viewing a house she believed to be vacant for a client. When Richardson "appeared from nowhere," the complainant, thinking he was the property manager, explained why she was in the house. When he did not respond, and kept staring at her, the complainant became frightened and moved toward the door. Richardson stepped toward the door and blocked her exit. The complainant testified that Richardson "put a hammerlock" on her head. With his arm around her neck, Richardson dragged her down the hallway toward a back bedroom.

The complainant began to scream, and Richardson said, "shut up, or I'll hurt you." She did not stop screaming. As Richard-

---

1. This offense occurred on September 26, 1986, prior to the 1987 amendments to the sexual assault sections of the Penal Code. Thus, the statute in effect at the time of the offense and, therefore, applicable to Richardson's trial, is Act of June 19, 1983, ch. 977, § 3, 1983 Tex.Gen. Laws 5311, 5315. The 1987 amendments apply only to offenses committed after September 1, 1987. *See* Act of June 18, 1987, ch. 573, § 1, 1987 Tex.Sess.Law Serv. 4546 (Vernon) (codified at TEX. PENAL CODE ANN. § 22.021(a)(2)(A)(iii) (Vernon Supp.1988)).

son dragged her, he kept pushing her down as if to muffle her screams. They were struggling, and as they reached the end of the hall, Richardson slammed her head into the wall. The complainant testified that she must have fallen, because she remembered being on the floor and seeing the carpet and the walls.

The complainant could not recall whether Richardson picked her up off the floor or if she got up on her own. Nevertheless, she regained her feet and Richardson dragged her into the bedroom. He shut the door and stood between the complainant and the door. He told her to take off her panties and get down on the floor. The complainant complied, and begged him not to rape her. They struggled, and the complainant hit her head on the floor and the walls. The complainant testified, "The more I resisted, the more aroused he became. The more physically abusive and violent he became. I don't know what triggered—I don't know what I did to make him do this, but his anger reached a height. It was like a climax. A peak. And he beat me in the head."

The complainant testified that Richardson hit her in the head with his fist, stunning her. He hit her with the force of his body, because his body turned to the point that she could see a knife in Richardson's back pocket. She stopped struggling after seeing the knife, because she feared for her life. She testified that she did not want to do anything that "would trigger the violent act of him hitting at me again, because I didn't know if I could retain consciousness from another blow on my head."

The complainant stated that she managed to regain her feet, but Richardson kept trying to push her down to the floor. When he could not push her down, he tripped her. She fell several times, but kept getting up so she could keep an eye on the knife. At one point when she fell, she hit her head "very, very hard." She managed to get up onto her hands and knees. It was at this point that Richardson forced her to engage in oral sex. After ejaculating in her mouth, he pulled up his pants and walked to the door. He said, "Don't leave here for ten minutes," and shut the door.

The complainant was examined at the hospital and was given a shot. The complainant testified that she had a knot on her head and the doctor examined her head, as well as her legs. She did not know what treatment was administered. A nurse who saw the complainant shortly after the attack and before she was taken to the hospital testified that the complainant had a bloody abrasion and large-sized lump on her head. She had two large red spots over her eyes, and marks on her neck and arms.

■ Richardson argues that the evidence is insufficient to prove his guilt of the aggravating element because he made no express verbal threats of death or serious bodily injury, did not use or exhibit a deadly weapon, and did not inflict upon the victim serious bodily injury. Under the former aggravated rape statute, TEX. PENAL CODE § 21.03(a)(2) (Vernon 1974)[2], the Court of Criminal Appeals held that "threat of death, serious bodily injury or kidnapping" could be shown only by express verbal threats, use of a deadly weapon or the actual infliction of serious bodily injury. *Rucker v. State*, 599 S.W.2d 581, 586 (Tex.Crim.App.1979).

With the 1981 amendments to the rape statute, however, the legislature dealt a fatal blow to the *Rucker* exegesis of section 21.03. The bill analysis from the House Committee on Criminal Jurisprudence explains the bill's purpose:

In the 1979 case of *Rucker vs. State* the Texas Court of Criminal Appeals reversed the aggravated rape conviction of defendant Rucker. The Court held that although the evidence was sufficient to prove simple rape, it was not sufficient to prove the element of aggravation. The Court found that no express verbal

---

**2.** Act of June 14, 1973, ch. 399, § 1, 1973 Tex. Gen.Law 883, 916 (amended by Act of April 30, 1981, ch. 96, § 1, 1981 Tex.Gen.Laws 203) (repealed by Act of June 19, 1983, ch. 977, § 12, 1983 Tex.Gen.Laws 5321).

threat was made to compel submission to the rape, no weapon was used, and though defendant struck complainant with his fist and though she testified that she was in fear for her life, no serious bodily injuries, as that term is defined by statute, were inflicted. The victim's injuries consisted of black and swollen eyes, a swollen face, cuts inside her lip, bruised chest and breast, scratched and abraded buttocks and legs, and a rash from poison ivy, but she suffered no concussion, no broken bones, no internal injury, or scars, no serious permanent disfigurement, and no protracted loss or impairment of any part of her body. *The Court stated that if a conviction for aggravated rape was to be upheld in cases such as this, the legislature would need to make statutory changes in the Penal Code.*

\*       \*       \*       \*       \*       \*

*The bill proposes to amend Section 21.-03* (aggravated rape) *and Section 21.05* (aggravated sexual abuse) *of the Texas Penal Code by providing language which would allow acts such as the above described to be prosecuted and upheld as aggravated rape.*

HOUSE COMM. ON CRIMINAL JURISPRUDENCE, BILL ANALYSIS, Tex H.B. 364, 67th Leg. (1981) (emphasis added).

The bill, as initially proposed, added what is now section 22.021(a)(2)(A)(ii) providing that sexual assault is aggravated when the defendant places the victim in fear of death or serious bodily injury. The proposed bill also removed the requirement that the rape be compelled through threats. However, the proposal made no other change to the subsection dealing with threats of death, serious bodily injury or kidnapping. A modified bill was substituted for the one proposed initially, and the substituted bill added language providing that the threats could be communicated "by acts, words or

deeds occurring in the presence of the victim." The same bill analysis was appended to the substituted bill.

Thus, it is clear that the addition of the language "by acts, words or deeds" was intended by the legislature to effect a change in prior law. *See Ex parte Trahan,* 591 S.W.2d 837, 842 (Tex.Crim.App. 1979) (in enacting an amendment, legislature is presumed to have changed the law). Our review of the legislative history persuades us that the legislature added the language "by acts, words or deeds" to remove *Rucker* from the jurisprudence of the State. It is particularly noteworthy that the "acts, words or deeds" language is almost identical to language in *Seaton v. State,* 564 S.W.2d 721, 724 (Tex.Crim.App. 1978), which was overruled by the Court of Criminal Appeals in *Rucker. See Elkins v. State,* 681 S.W.2d 890, 893 (Tex.App.—Fort Worth 1984, no pet.) (by adopting "acts, words or deeds" language of *Seaton,* legislature intended to overrule *Rucker* and show its approval of *Seaton.*); *Seek v. State,* 646 S.W.2d 557, 560 n. \* (Tex.App.— Houston [1st Dist.] 1982, no pet.).[3]

We conclude that the evidence need not show express verbal threats, infliction of serious bodily injury or use of a deadly weapon to support a conviction for aggravated sexual assault under the statute as amended in 1981. The conviction is supportable if the evidence, viewed in a light most favorable to the verdict, shows that the defendant threatened the victim with death, serious bodily injury or kidnapping. Such a threat can be communicated through acts, words or deeds.

We hold that the evidence that Richardson slammed the victim's head into a wall, struck her in the head with his fist hard enough to stun her and to cause her to almost lose consciousness, threw her onto the floor so that she struck her head on the floor, and threatened to hurt her was suffi-

3. We are aware that the 1983 enactment changed the language from "acts, words or deeds" to "acts or words." *See* Act of June 19, 1983, ch. 977, § 3, 1983 Tex.Gen.Laws 5321). However, nothing in the legislative history causes us to believe that the legislature intended the change to return to the law of *Rucker.* The

bill analysis suggests only that the legislature wanted to change the crime from "rape" to "sexual assault" to emphasize the assaultive nature of the crime, and to make the statute gender neutral. *See* HOUSE COMM. ON CRIMINAL JURISPRUDENCE, BILL ANALYSIS, Tex. H.B. 2008, 68th Leg. (1983).

cient to support the jury's finding that Richardson threatened the complainant with serious bodily injury. Point of error two is overruled.

### Warrantless Arrest

■ In point of error three, Richardson contends that the trial court erred in admitting evidence resulting from his arrest without an arrest warrant or probable cause. An arrest, whether effectuated with or without a warrant, must be based upon probable cause. *Campbell v. State*, 644 S.W.2d 154, 158 (Tex.App.—Austin 1982), *aff'd*, 647 S.W.2d 660 (Tex.Crim.App. 1983). *See also New York v. Belton*, 453 U.S. 454, 457, 101 S.Ct. 2860, 2862, 69 L.Ed. 2d 768, 773 (1981); *Pringle v. State*, 732 S.W.2d 363, 366 (Tex.App.—Dallas 1987, no pet.). "Probable cause" is not itself a fact which must be shown by the evidence; rather, it is a conclusion which may or may not be drawn from all the circumstances. *Campbell*, 644 S.W.2d at 158. Probable cause does not deal with technicalities; it is concerned with the factual and practical considerations of everyday life on which reasonable and prudent men act. *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879, 1890 (1949); *Pringle*, 732 S.W.2d at 367. To determine whether probable cause exists, we must evaluate the facts and circumstances within the officer's knowledge to decide whether the information was sufficient to warrant a prudent person in believing that the arrested person committed an offense. *Britton v. State*, 578 S.W.2d 685, 689 (Tex. Crim.App.1978), *cert. denied*, 444 U.S. 955, 100 S.Ct. 435, 62 L.Ed.2d 328 (1979).

■ Circumstances short of probable cause for arrest may justify temporary detention for purposes of investigation. *Schwartz v. State*, 635 S.W.2d 545, 546 (Tex.Crim.App.1982). The totality of the circumstances surrounding the incident are examined in determining whether the detention was reasonable and justified. *Schaffer v. State*, 562 S.W.2d 853, 855 (Tex.Crim.App.1978). The law enforcement officer must have specific, articulable facts which, in light of his experience and personal knowledge, together with other inferences from those facts, would reasonably warrant the intrusion represented by the detention. *United States v. Brignoni-Ponce*, 422 U.S. 873, 880, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607, 616 (1975); *Shaffer*, 562 S.W.2d at 855. In order to satisfy this standard, the police officers must have a reasonable suspicion that some activity out of the ordinary has occurred; some suggestion to connect the person detained with the unusual activity; and some indication that the activity was related to crime. *Pringle*, 732 S.W.2d at 367; *Bailey v. State*, 629 S.W.2d 189, 190 (Tex.App.—Dallas 1982, pet. ref'd). *See also United States v. Cortez*, 449 U.S. 411, 411–19, 101 S.Ct. 690, 691–96, 66 L.Ed.2d 621, 625–630 (1981). Investigatory stops are not limited to situations where the police officer has reasonable grounds to suspect that a crime is being committed or is about to be committed. If the police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony, an investigatory stop may be made to investigate that suspicion. *United States v. Hensley*, 469 U.S. 221, 229, 105 S.Ct. 675, 680, 83 L.Ed.2d 604, 612 (1985).

With these standards in mind, we turn now to the circumstances of Richardson's arrest. Jo Ellen Higgens testified that she saw a man standing outside her house and near a vacant house on October 8, 1986. He looked like the person depicted on a flier which had been handed out by the homeowner's association. The flier had stated that the man was wanted by the police. She described the man she saw as young, medium height, with long, blond hair and reddish skin that looked sunburned. The man was standing near a small, white car. He eventually left in that car. Higgins called the police and described the man and the car.

Ronald Prevost and Claudia DuKate testified that they received a flier about a rape that had occurred in their neighborhood. On October 8, 1986, they decided to drive by the house given as the place where the assault had occurred. When they got to

the house, they noticed a man in a car driving by who looked like the composite sketch on the flier. The man was driving a small car, perhaps foreign. They followed the car and copied down the license number. These witnesses called the police giving a description of the man, the car and the license number.

Officer McCreary of the Plano Police Department was patrolling the area on October 8, 1986. He received a radio call from the dispatcher that a suspicious vehicle had been seen in the area. McCreary was informed that the driver was a suspect in several sexual assaults committed in the area. The dispatcher described the suspect as a white male, with very blond hair and a very dark complexion. The car was described as a small white vehicle. The dispatcher also gave McCreary the license number.

McCreary had responded to a sexual assault call prior to October 8 where the suspect was described as a white male, very young, early twenties, baby-faced, dark complexion, with very light blond hair. Further, two weeks before, McCreary had been informed by a woman that she had seen someone in the area that matched the description of the sexual assault suspect. She described the man she had seen as a white male, blond hair and dark complexion, driving a small, white foreign vehicle.

After receiving the call from the dispatcher, McCreary spoke with Officer Mims, who was the primary officer designated to respond to the call. Officer Mims testified that the police department was aware that there had been several sexual assaults in the general vicinity within the past weeks. Officers McCreary and Mims were both trying to locate the vehicle described by the dispatcher. McCreary spotted him first. He saw a small, white car driving very slowly past him. As the car passed, he observed the driver. The driver fit the description given by the dispatcher, a victim interviewed by McCreary, and a citizen witness who had reported to McCreary: white male, dark complexion, very blond hair. McCreary pulled his car behind the suspect's car and verified that the license plate number matched the one given to him by the dispatcher. McCreary then signalled the suspect to pull over.

McCreary asked the suspect to exit his vehicle and asked for identification. The suspect did not have a driver's license with him, but gave McCreary his name, license number and date of birth. When the number was relayed to the dispatcher and run through the computer, McCreary was informed that the license was suspended. McCreary then arrested Richardson for driving while his license was suspended.

■■■■■ Richardson argues that his arrest was unjustified because the initial stop was not supported by probable cause. We disagree. The circumstances apparent to Officer McCreary on October 8 were that a victim had given him a description of her rapist; a citizen witness had informed him personally that she had seen the rape suspect in the area driving a small white car; the dispatcher had received information from three citizen witnesses that the rape suspect was again in the area; the dispatcher gave McCreary physical descriptions of the vehicle and the suspect and the dispatcher gave McCreary the license plate number reported by the citizen witnesses. When McCreary saw the suspicious vehicle, he noted that the descriptions matched those given by the witnesses, the victim and the dispatcher. We note that statements from a victim or witness may constitute part of the circumstances justifying the detention. *Mann v. State*, 525 S.W.2d 174, 176 (Tex.Crim.App.1975); *Pringle*, 732 S.W.2d at 367; *Campbell*, 644 S.W.2d at 156.

We conclude that Officer McCreary had specific, articulable facts to raise a reasonable suspicion that Richardson was involved in or wanted in connection with a completed felony. *Hensley*, 469 U.S. at 229, 105 S.Ct. at 680, 83 L.Ed.2d at 612. Consequently, we hold that the stop was lawful. Having then discovered that Richardson was driving with a suspended license, Officer McCreary had the authority and duty to arrest him. TEX.CODE CRIM. PROC.ANN. § 14.01(b) (Vernon 1977).

Richardson's third point of error is overruled.

### Discovery Order

■ In his fourth point of error, Richardson contends that the trial court erred in overruling his motion for mistrial on the grounds that the State violated a discovery order by failing to disclose the name of a material witness. During Officer Mims' testimony concerning Richardson's arrest, he mentioned that Jim Latham, a security guard, was present at the scene of the arrest. Richardson contends that he was entitled to be informed of Latham's name pursuant to the discovery order.

We have examined Richardson's motion for discovery, which requests the court to order the State to produce nineteen categories of information. The court order granting the motion provides that the State is to disclose "all the designated items in said motion." Nowhere in his motion does Richardson request the names of witnesses who will testify or the names of persons with knowledge of facts relating to the case. Thus, the record does not support Richardson's claim that the State violated the court's discovery order.

■ Further, we conclude that Richardson was not entitled to disclosure of the witness' name absent a discovery order. The State is generally not required to reveal the names and addresses of witnesses other than those it intends to call at trial. *Hendricks v. State,* 640 S.W.2d 932, 935 (Tex.Crim.App.1982); *Young v. State,* 547 S.W.2d 23, 27 (Tex.Crim.App.1977). Prosecutor O'Connell stated without contradiction that he never intended to call Latham as a witness; in fact, he had never spoken to Latham and had no idea what Latham knew about the arrest. Thus, the State did not violate Richardson's right to discovery when it did not include Latham's name on a list of testifying witnesses tendered to Richardson.

Richardson argues further that the State wilfully suppressed exculpatory evidence when it failed to disclose Latham's name. Richardson's counsel stated on the record that he specifically requested Prosecutor Baetz–Francis to provide him with the name and address of a security guard who was a witness to the arrest and was advised by her that no security officer was involved. Richardson also requested exculpatory evidence in his discovery motion.

■ The suppression by the prosecutor of evidence favorable to the accused violates due process where the evidence is material either to guilt or punishment. *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215, 218 (1963); *Herring v. State,* 738 S.W.2d 18, 19 (Tex.App.–Austin 1987, pet. ref'd). Since *Brady,* the Supreme Court has elaborated upon the showing required for reversal of a conviction based on the suppression of favorable evidence:

> The heart of the holding in *Brady* is the prosecution's suppression of evidence, in the face of a defense production request, where the evidence is favorable to the accused and is material either to guilt or to punishment. Important, then, are (a) suppression by the prosecution after a request by the defense, (b) the evidence's favorable character for the defense, and (c) the materiality of the evidence.

*Moore v. Illinois,* 408 U.S. 786, 794–95, 92 S.Ct. 2562, 2568, 33 L.Ed.2d 706, 713 (1972). *See Rector v. State,* 738 S.W.2d 235, 244–45 (Tex.Crim.App.1986).

Because Richardson's counsel's statements were not contradicted by the State, we will assume that the State did suppress Latham's name after a request by the defendant. Thus, we now consider whether the evidence was favorable to the defendant and whether the evidence is material.

Latham was called to testify outside the presence of the jury at a later point during the trial. He testified that he owned a security business and was patrolling the area where Richardson was arrested. He heard on his police scanner that the police were looking for a small, white car driven by a blond man. He saw the vehicle shortly before Officer McCreary pulled the car over. He pulled up behind Officer McCreary's squad car.

Latham confirmed that the dispatcher gave McCreary a physical description of the car and the driver and that the dispatcher relayed the license plate number. Latham also confirmed McCreary's testimony that the driver, car and license number matched that given by the dispatcher. The remainder of Latham's testimony was that he did not hear anything and that he did not remember the exact order of events. Latham also confirmed testimony given by Officer Mims.

We conclude that Latham's testimony was not favorable to Richardson's defense. Latham merely confirmed a number of the circumstances that we have held constituted sufficient grounds for Richardson's stop and arrest. Furthermore, we hold that the evidence was not material to guilt or punishment. Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceedings would have been different. A reasonable probability is one sufficient to undermine confidence in the outcome. *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481, 494 (1985). Nothing in Latham's testimony raises a reasonable probability that the result of the proceedings would have been different.

Having concluded that the State did not violate a discovery order and that the State did not suppress material evidence favorable to Richardson, we overrule point of error four.

### Limiting Cross–Examination of Defendant

In point of error five, Richardson contends that the trial court erred in denying his motion to restrict the State's cross-examination of Richardson during the punishment stage of trial. Richardson argues that a defendant who testifies at the punishment phase is in danger of waiving certain constitutional rights for purposes of appeal. Although Richardson cites no authority, we deduce that he refers to *DeGarmo v. State*, 691 S.W.2d 657 (Tex.Crim. App.1985), *cert. denied*, 474 U.S. 973, 106 S.Ct. 337, 88 L.Ed.2d 322 (1986). In *De-Garmo*, the court noted that a defendant who admits his guilt during the punishment stage waives any error that might have occurred during the guilt stage. *Id.* at 661.

In order to prevent a *DeGarmo* waiver, Richardson filed a written motion asking the court to order the State to refrain from questioning him "on the issue of the Defendant's guilt on the offense charged." The court denied the motion. Richardson asserts that he chose not to testify on his own behalf because the court denied the motion. He avers that he should have been given the right to offer testimony as to his eligibility for probation without suffering the possible pitfalls of *DeGarmo*.

We note initially that the motion to restrict cross-examination of the defendant was in the nature of a motion in limine. The denial of a motion in limine is not sufficient to preserve error for review. There must be a proper objection to the evidence when proffered at trial. *Basham v. State*, 608 S.W.2d 677, 679 (Tex.Crim. App.1980). We note further that Richardson cites no authority in support of his point of error. Thus, nothing has been presented for review. TEX.R.APP.P. 74(f); *Woods v. State*, 569 S.W.2d 901, 905 (Tex. Crim.App.1978), *cert. denied*, 453 U.S. 913, 101 S.Ct. 3145, 69 L.Ed.2d 995 (1981). Nevertheless, we will, in the interests of justice, address Richardson's point as we understand it.

It is well settled that a defendant who voluntarily takes the stand during his trial is on the stand for all purposes and may be properly questioned about the facts of the case and made to give evidence against himself. *Williams v. State*, 607 S.W.2d 577, 578 (Tex.Crim.App.1980); *Ayers v. State*, 606 S.W.2d 936, 939 (Tex.Crim. App.1980). Thus, a defendant who takes the stand during the punishment phase of trial may be questioned as to guilt or innocence. *Bridges v. State*, 656 S.W.2d 505, 508 (Tex.App.—Tyler 1982, pet. ref'd), *cert. denied*, 464 U.S. 838, 104 S.Ct. 129, 78 L.Ed.2d 125 (1983). In *Bridges*, the defendant did admit his guilt during the punishment stage and, therefore, did waive a

number of points of error on appeal. *Bridges*, 656 S.W.2d at 508–09.

The trial court enjoys broad discretion in the conduct of the trial and the questioning of witness; its rulings on these matters will not be disturbed absent an abuse of discretion. *Suiter v. State*, 310 S.W.2d 81, 82 (Tex.Crim.App.1958); *Deams v. State*, 159 Tex.Cr.R. 496, 265 S.W.2d 96, 98 (1954). We find no abuse of discretion in the trial court's refusal to prevent the State from making proper inquires during the punishment stage.

In any event, the record fails to show that Richardson was harmed when he gave up his right to testify as to his eligibility for probation. Both of his parents testified that Richardson had never been convicted of a felony offense in this or any other state. In its charge to the jury, the court instructed the jury that a defendant who has never been convicted of a felony is eligible for probation. Thus, Richardson's application for probation was considered by the jury. Point of error five is overruled.

Having considered and overruled Richardson's five points of error, we affirm the trial court's judgment.