NO. 07-06-0196-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

NOVEMBER 9, 2006

______________________________

JUAN MOISES BLANCO, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_________________________________

FROM THE 22ND DISTRICT COURT OF CALDWELL COUNTY;

NO. 2003-272; HONORABLE TODD BLOMERTH, JUDGE

_______________________________

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

MEMORANDUM OPINION

Pursuant to a guilty plea, appellant, Juan Moises Blanco, was convicted of possession of a controlled substance and sentenced to two years confinement, probated in favor of five years of community supervision, and a $1,000 fine.  By a single issue, he contends the trial court erred in denying his motion to suppress evidence obtained from a search incident to his arrest.  We affirm.

Appellant was charged with possession of a controlled substance after police officers discovered heroin in his sock during a search incident to his arrest.  

On February 6, 2003, Lockhart Police Officer Richard Torres was dispatched to Elm Square Apartments to investigate a call that four suspicious males were walking around the apartment complex looking in windows.  Dispatch informed him that the men were seen leaving the scene in a red Grand Am and that the witness was able to obtain the vehicle’s license plate number.  Unable to locate the suspects at the scene, Officer Torres began patrolling around town.  Several minutes later, he observed a vehicle matching the witness’s description and license plate number and initiated an investigatory detention.

When Officer Torres approached the vehicle, he observed appellant in the driver’s seat and two male passengers.  He advised the men that the vehicle was reported as suspicious and asked them what they were doing at Elm Square Apartments.  A check on appellant’s driver’s license revealed that he had outstanding warrants for his arrest.  Upon learning this information, Officer Torres immediately placed appellant under arrest.  He then proceeded to search the vehicle and discovered syringes containing heroin residue in the trunk.  When confronted with the evidence, appellant admitted that they were his and informed the officer that he had heroin and marihuana in his socks.

After waiving arraignment, appellant filed a motion to suppress the drug evidence claiming he was arrested without a warrant and without probable cause in violation  of the Fourth, Sixth, and Fourteenth Amendments to the United States Constitution.  At the hearing on the motion, the court heard testimony from the witness who observed the suspicious activity and Officer Torres.  By letter brief, appellant asserted that Officer Torres did not have sufficient grounds to stop and arrest him because the officer failed to meet the requirements of article 14.03(a) of the Texas Code of Criminal Procedure.
(footnote: 1)  The court subsequently denied appellant’s motion, and appellant pled guilty to the offense.

By his sole issue, appellant contends the trial court erred by denying his motion to suppress because Officer Torres lacked specific articulable facts to justify an investigatory stop.  We disagree.

We review a trial court’s ruling on a motion to suppress for abuse of discretion.  
Balentine v. State
, 71 S.W.3d 763, 768 (Tex.Crim.App. 2002).  Under this standard, we afford almost total deference to the trial court’s determinations of historical facts when supported by the record.  
Guzman v. State
, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997).  However, mixed questions of law and fact not dependent on evaluation of credibility and demeanor, such as those involving investigatory detentions and  reasonable suspicion, are reviewed de novo.  
Sanders v. State
, 992 S.W.2d 742, 744 (Tex.App.–Amarillo 1999, pet. ref’d) (citing 
Hunter v. State
, 955 S.W.2d 102, 107 (Tex.Crim.App. 1997)).  When, as here, the trial court does not file findings of fact, we view the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record.  
Carmouche v. State
, 10 S.W.3d 323, 327-28 (Tex.Crim.App. 2000).

A police officer may stop and briefly detain persons reasonably suspected of criminal activity, even if probable cause to arrest is not then present.  
See
 
Terry v. Ohio
, 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).  The reasonableness of the detention must be examined in terms of the totality of the circumstances and is justified when the detaining officer has specific articulable facts leading to a reasonable conclusion that the person to be detained is, has been, or soon will be engaged in illegal activity.  
Woods v. State
, 956 S.W.2d 33, 38 (Tex.Crim.App. 1997).  Considering the facts known to the officer here, we conclude that he was justified in detaining appellant.

Officer Torres testified that, immediately prior to the stop, he was investigating a report of four suspicious males seen looking in windows at an apartment complex shortly before four o’ clock in the morning.  The officer was aware that the apartment complex had a reputation for drug activity.  Dispatch informed him that the suspicious persons left the scene in a red Grand Am and he was provided with the vehicle’s license plate number.  Seven minutes after being dispatched, he observed a vehicle which fit the description and displayed the same license plate number.  He testified that he initiated the investigatory detention to determine what the occupants were doing at the apartment complex.  He subsequently discovered appellant had several outstanding warrants for his arrest.  Based on this evidence, considering the totality of the circumstances, we conclude Officer Torres had reasonable suspicion to believe that appellant’s vehicle was, had been, or would soon be engaged in illegal activity based on the specific articulable facts provided by dispatch.  
See
, 
e.g
.,
 
Sanders
,
 992 S.W.2d at 742 (officer dispatched to attempted burglary observed defendant driving away from the scene); 
Richardson v. State
, 753 S.W.2d 759, 767, (Tex.App.–Dallas 1988, no pet.) (description of defendant and his vehicle matched that provided by dispatcher). 

By his brief, appellant maintains his detention was not justified because the evidence fails to establish that he was in a suspicious place and guilty of or about to commit some offense as required by article 14.03(a)(1)of the Texas Code of Criminal Procedure.  However, his reliance on this provision is misplaced.  Article 14.03 pertains to the authority of peace officers to conduct a warrantless arrest as opposed to a temporary investigative detention.  
See
 
Tex. Code. Crim. Proc. Ann
. art. 14.03(a) (Vernon 2005).  With respect to the latter, law enforcement officers may stop and briefly detain persons suspected of criminal activity on less information than is constitutionally required for probable cause to arrest.  
Terry
, 392 U.S. at 22; 
Crockett v. State
, 803 S.W.2d 308, 311 (Tex.Crim.App. 1991).

Viewing the evidence in the light most favorable to the trial court’s ruling, we find the trial court did not err in denying appellant’s motion to suppress.

Accordingly, the trial court’s judgment is affirmed.       

Mackey K. Hancock

        Justice

Do not publish.   udication any time prior thereto is unknown.  However, on February 7, 2000,  the defendant moved for a continuance.  He did so on the ground that his counsel had suffered a heart attack and was undergoing testing.  Thereafter, the proceeding was set for trial on July 10, 2000.  Why it was not then tried is also unknown.  Nevertheless, the matter was placed on the court’s “backlog docket,” and the parties agreed that the ensuing delay was caused, for the most part, by “the large docket of the court.”  

Though being on the “backlog docket,” the matter did not remain completely dormant.  The parties did engage in plea negotiations during the interim.  And, both the State and appellant agree that the proceeding twice appeared on the “guilty plea docket.”  According to counsel for appellant, the latter had accepted a plea offer only to later reject it.  His rejection came after discovering that the video tape of his undergoing sobriety tests at the police station was missing.  

Delay caused by good faith plea negotiation does not weigh against the government.  
Munoz v. State
, 991 S.W.2d at 824.  To the extent that the State offered and appellant initially accepted a plea bargain, one can reasonably infer that the plea negotiations at bar were undertaken in good faith.  Nor does delay arising from a continuance sought by the defendant bode in favor of a speedy trial claim.  And, to the extent that the remainder of the delay at bar is attributable to an overcrowded docket, that delay is considered relatively neutral.  
Id.
 at 822.  That is, it may weigh against the state but to a much lesser degree than delay caused by a deliberate attempt on behalf of the government to postpone.  
Anderson v. State
, 8 S.W.3d at 390.

Assertion of the Right

Next, the record reflects that appellant failed to raise the spectre of speedy trial until June of 2001(some 27 months after the State formally initiated the prosecution).  Moreover, when he did broach the subject, appellant did not demand that he be immediately tried.  Rather, he moved to dismiss the proceeding.  Additionally, this request came after he 1) discovered that the video tape of his sobriety test was missing and 2) withdrew his acceptance of a plea bargain.  It also appears that while the action awaited resolution he remained free from the confines of jail.  These circumstances are of import since delay in demanding a speedy trial makes it difficult for an accused to prove that he was denied a speedy trial.  
Anderson v. State
, 8 S.W.3d at 391.  Indeed, it constitutes strong indication that he does not want a timely adjudication of the pending charges.  
Id.
  And, when the delay is coupled with the evidence illustrating that 1) he was free during the interim, 2) reacted only after discovering the loss of evidence potentially favorable to the prosecution, and 3) merely sought to win dismissal as opposed to a speedy trial, we find it difficult to conclude that appellant truly desired a speedy trial.  
See Degarmo v. State
, 922 S.W.2d 256, 266 (Tex. App.-- Houston [14th Dist.] 1996, pet. refd.) (stating that a defendant asking for dismissal, as opposed to a prompt trial, is clearly relevant and may attenuate the strength of his speedy trial claim ). 

Prejudice

Finally, whether appellant was prejudiced by the delay is assessed with an eye towards the interests which the right to a speedy trial were designed to protect.   
State v. Munoz
, 991 S.W. 2d at 826.   Those interests consist of 1) preventing oppressive pretrial incarceration, 2) minimizing anxiety and concern of the accused, and 3) limiting the chance that the accused’s defense will be impaired. 
 Id.
  Of these indicia, the last is most important since the inability to adequately defend ones self affects the fairness of the entire system.  
Id
.   And, while unsaid by most courts, it is nonetheless a necessity that the prejudice in question emanate from the delay.  
Anderson v. State
, 8 S.W.3d at 391-92.  In other words, there must be a causal relationship between the two.  If this were not so, then logically the factor would be of no importance.  
Id.

As to the matter of pretrial incarceration, the record discloses that appellant’s freedom was not so restricted.  That this is true is illustrated by his testifying that he babysat his grandchild at the time of trial.  One can hardly babysit while incarcerated.

As to the matter of anxiety, little appears in the record.  Indeed, appellant does not suggest that this indicia prejudiced him in any way.  Rather, he simply argues that he suffered prejudice because the video tape of his undergoing sobriety testing was lost.  Yet, we find that of no consequence for several reasons.  First, whether the tape contained evidence detrimental or helpful to appellant’s defense is unknown.  It can hardly be suggested that the loss of evidence is prejudicial to an accused’s defense when no one knows what the evidence depicted.  
See
 
United States v. Valenzuela - Bernal
, 458 U.S. 858, 873, 102 S.Ct. 3440, 3449, 73 L.Ed.2d 1193 (1982) (stating that when an accused complains of lost evidence, he must show that the evidence lost is material and favorable to him); 
Mahaffey v. State
, 937 S.W.2d 51, 53 (Tex. App.--Houston [1st Dist.] 1996, no pet.) (stating the same).
(footnote: 1) 

More importantly, the record is silent on whether the delay is attributable to the loss of the tape.  At most, the State merely suggested that the nexus between the two was a “possibility.”  Yet, we find this of little substance since no one knew when or how the tape was lost.  And, without such evidence, one cannot reasonably infer any nexus between the delay and the loss.  Indeed, it may well be that whoever possessed the tape lost it immediately after the formal charges were filed against appellant.  If this were so, then the loss was hardly caused by the delay.  So too may the converse be true, 
i.e.
, that the tape was lost long after charges were filed.  Yet, because the record contains no evidence on the matter, we can only speculate upon the relationship between delay and loss, and speculations have no probative value. 

Summary

Simply put, the evidence of prejudice is minimal.  Similarly minimal is the evidence suggesting that appellant actually wanted to be tried in a timely manner. And, though there existed delay, it was caused by both the State and appellant.  And, to the extent it was caused by the State, the reason it did so must be weighed “less heavily” against the government, according to precedent.  In sum, these are not circumstances indicating that appellant was denied his right to a speedy trial.  And, the trial court did not err in refusing to grant appellant’s motion to dismiss.

Issue Two – Fatal Variance

In his second and last issue, appellant claims that there arose “a material variance between the . . . information and the proof adduced at trial” which proved “fatal to [his] conviction.”  This purported variance involves the manner in which the State intended to prove that appellant was driving while intoxicated.  That is, appellant contends that the State obligated itself to prove, via evidence of a breath test, that he had a blood alcohol concentration of .10 or more.  Yet, no evidence of a breath test was presented.  Nor was any other evidence of his blood alcohol concentration presented.  Given this, there arose a discrepancy between the allegations in the charging instrument and the proof at trial warranting an instructed verdict, appellant concludes.  We overrule the point.     

To prove the offense of driving while intoxicated, the State must present evidence establishing that a person operated a motor vehicle in a public place while intoxicated.  
Tex. Penal Code Ann
. §49.04(a) (Vernon Supp. 2000).  Since there exists several statutory ways in which one can be intoxicated, the State is also obligated to allege and prove a least one of those means.  
State v. Carter
, 810 S.W.2d 197, 200 (Tex. Crim. App. 1991).  Furthermore, those ways in which one can be intoxicated consist of 1) establishing that the person did not have the normal use of mental or physical faculties by reason of the introduction of alcohol or any other substance into the body or 2) having an alcohol concentration of .08 or more.
(footnote: 2)  
Tex. Penal Code Ann
.
 §49.01(2).  Yet, as intimated above, the State need only prove one or the other.  This does not mean that it is precluded from alleging one or both in the charging instrument.  
See Krebsbach v. State
, 962 S.W.2d 728, 730-31 (Tex. App.–Amarillo 1998, pet. ref’d.) (stating that the government may allege all or one of the ways in which an offense can be committed if the statute provides a list of different ways).  It may do either.  If it were to allege both, it may do so either in the conjunctive or disjunctive; yet, it still need only prove one, irrespective of whe
ther the conjunctive or disjunctive were used.  
Wheeler v. State
, 35 S.W.3d 126, 133 (Tex. App–Texarkana 2000, pet. ref’d.); 
Krebsbach v. State
, 962 S.W.2d at 731.  Finally, since it need only prove one or the other and assuming both are pled in the charging instrument, it may also abandon one or the other.  
Eastep v. State
, 941 S.W.2d 130, 133-34 (Tex. Crim. App. 1997).      

At bar, the State accused appellant (via the information) of being intoxicated by

 . . .
not having the normal use of mental or physical faculties
, by reason of the introduction of alcohol, a controlled substance, a drug, a substance or its vapors that contain a volatile chemical, an abusable glue or an aerosol paint, or a combination of two or more of those substances into the body, 
having an alcohol concentration of .10 or more,
 as measured by the number of grams of alcohol per 210 liters of breath, operate a motor vehicle in a public place . . . .

(Emphasis added).  From this we see that despite the absence of the conjunctive “and” or disjunctive “or,” it nevertheless incorporated into the charging instrument both statutory ways in which one could be intoxicated.
(footnote: 3)  That is, it merely averred that appellant lacked the normal use of his mental or physical faculties by ingesting a substance 
and
 that he had an alcohol concentration of .10 or more.  Despite alleging both, it need only have proved one or the other.  
Wheeler v. State
, 
supra
; 
Krebsbach v. State
, 
supra
.  And, this the State opted to do when it “ask[ed] for the abandonment as a means of limiting [the accusation] to what must be proved . . . .”   Finally, in response to this request by the State, the trial court omitted from its jury charge the allegation regarding “an alcohol concentration of .10" and retained that regarding the lack of the normal use of mental and physical faculties.

In sum, the State was not obligated to prove that appellant had a blood alcohol concentration of .10 or more simply because the allegation was mentioned in the information.  Authority entitled it to choose the method by which it intended to prove how appellant was intoxicated since both definitions were included in the information.  And, that the appellant may have thought that the State was obligated to prove an alcohol concentration of .10 since that allegation appeared in the information matters not given 
Wheeler
 and 
Krebsbach
.
(footnote: 4) 

Accordingly, the judgment of the trial court is affirmed.

Brian Quinn

      Justice

Do not publish.

  

FOOTNOTES
1:
At the conclusion of the testimony at the motion to suppress hearing, the court requested that counsel present their arguments by brief.  

1:
2:
3:
4: