IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-91-326-CR




JUAN LUIS ZARATE,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL

DISTRICT


NO. 91-294-K26, HONORABLE WILLIAM S. LOTT, JUDGE PRESIDING



 




 This appeal stems from a felony conviction for aggravated possession of marihuana. 
See Tex. Health & Safety Code Ann. § 481.121(a), (c) & (d)(2) (West 1992). Appellant entered
a plea of guilty to the indictment before a jury. The jury found appellant guilty and assessed his
punishment at seventy-five years' imprisonment and a fine of one hundred thousand dollars.

 In his sole point of error, appellant complains that the trial court erred in permitting
the prosecutor, over objection, to comment on his failure to testify. Appellant particularly
complains that the trial court erred in denying his motion for a mistrial.

 To place the point of error in proper perspective, we will briefly recite the evidence
at the unitary trial. After appellant entered his plea of guilty before the jury, the State called
Texas Department of Public Safety Troopers Lee Richards and Will Crois. They testified that on
February 9, 1991, they made a routine traffic stop of a U-Haul truck being driven by appellant on Interstate 35 in Williamson County. The truck had no mud flaps as required by law
and was weaving on the highway. Appellant had no driver's license. The truck contained
furniture. With appellant's consent, the Troopers searched the truck and found twenty bales of
processed marihuana. The stalks had been removed and the substance dried. The chemist
testified that the substance seized was 821.8 pounds of marihuana.

 Jerry Blanco, the general manager of a U-Haul store in Dallas testified that on
February 8, 1991, he had rented the U-Haul truck in question to Ricardo Lira. Lira testified that
he had rented the truck as a favor for Jose Armando and a friend of Armando's whose name he
did not know. The friend was not appellant, whom Lira knew by sight.

 Department of Public Safety Sergeant Kent Radney testified as an expert on
narcotics trafficking. The parties stipulated that appellant had been convicted of driving while
intoxicated in Comal County on May 10, 1990, and placed on misdemeanor probation. A Comal
County Probation Officer testified that the supervision of appellant's probation had been
transferred to Dallas County. The officer revealed that leaving Dallas County without permission
and hauling marihuana were in violation of appellant's probationary conditions.

 The sole witness for the defense was Isidora Zarate, appellant's wife. She testified
that she and appellant had been married for eighteen years and that he had never been convicted
of a felony. She stated that she had not received and did not anticipate receiving money from
anyone because appellant was being prosecuted. Appellant's wife also stated that they did not
have the money necessary to pay a lawyer.

 On cross-examination, Mrs. Zarate revealed that appellant had never talked to her
about the offense charged. On the night of his arrest, appellant only explained to her that he had
violated his probation by leaving Dallas County. She insisted that appellant had never told her
how he came into possession of the eight hundred pounds of marihuana, or the actual
circumstances of his arrest. She denied that appellant had informed her that he could not talk
because "that" would keep his family safe. Appellant's wife did not know whether appellant was
involved with anyone else in the offense charged, or whether anyone was "forcing him not to talk
to her."

 In his closing argument, the prosecutor told the jury that in assessing punishment
it should consider the quantity, quality, and value of the marihuana and the fact that appellant "had
a conscious recognition of the risk involved here." The record then reflects:



He knows what he has done is wrong. He knows so well that he's not going to tell
her a single thing about it, if you believe what she testified to. Her testimony tells
you one of two things; if you believe what she told you, then it tells you that he
has created a veil of silence that is not going to be broken, even for a half million
dollars worth of drugs which we allegedly know from the testimony he couldn't
possibly have afforded.


MR. BARRERA [defense counsel]: Your Honor, may I approach the bench?



 (A discussion was had at the bench,

 out of the hearing of the Jury, as follows:)



MR. BARRERA: I object to Counsel's last statement. I believe that is a comment
on my client's failure to testify. I ask that the Jury be instructed to disregard that
last statement of Counsel and ask for a mistrial.


MR. BRADLEY: I'm commenting on what he told his wife, not what he has said
or not said in court, and I'll clarify that if you want me to.


 THE COURT: All right.


MR. BARRERA: Could I have a ruling, please.


 THE COURT: Objection is overruled with that condition. Let him
clarify.



 (The discussion at the bench

 concluded, and the proceedings

 continued as follows:)



MR. BRADLEY: When I talked to you about what Mr. Zarate said, I'm talking
to you about what he said to his wife because you are entitled to take that and
evaluate it, you are entitled to know why he was quiet with his wife. You may not
use his silence in any other form, for any other purpose. And I want you to follow
that charge. It says don't have anything to do with the fact that he didn't testify
in this case; and I don't want you to have anything to do with that, and I don't
want you to use that for any purpose. But his silence with his wife is something
you can look at and evaluate, and I ask you to do that. He's silent with his own
wife; why? If you believe, it's because he knows he's got something very, very
valuable to protect and breaking that silence is the worst thing he could do. Now,
if you don't believe his wife -- and I suggest to you that you shouldn't -- then he did
tell her and she does know what's going on, and she's the one here that's going to
continue that veil of silence. We don't know which one of them is true, and it
really doesn't matter. The point is that neither one of those people is willing to
expose people beyond themselves for the guilt that they have, for whatever reason. 
Perhaps because they'll be taken care of at some future date, perhaps it's just out
of genuine fear. But at any rate, don't give them a single credit for cooperating
in this case; zip. You know, you must have been thinking, "Well, don't I have to
give him some credit for pleading guilty? I mean, he came into court and he didn't
make the State prove its case and he plead guilty, doesn't he get some credit for
that?" Why did he plead guilty? You heard the case. I'd have put on the same
case whether he'd pled guilty or not. You heard the case. What did he have to
contest? What did he have to gain by pleading not guilty, except to irritate you? 
So his plea of guilty is not out of any true sense of cooperation. There's no
evidence that he did it out of remorse.


MR. BARRERA: Your Honor, I object. May we approach the bench?



 (A discussion was had at the bench, out of

 the hearing of the Jury, as follows:)



MR. BARRERA: I object to that statement of Counsel that there's no evidence
that my client is pleading guilty --


 THE COURT: I can't hear you.


MR. BARRERA: I object to the statement of Counsel that my client -- that there's
no evidence that my client --


MR. BRADLEY: There was evidence of remorse; I'll rephrase that.


MR. BARRERA: -- pled guilty and that there was no evidence of remorse.


MR. BRADLEY: The wife did testify to that.


MR. BARRERA: I believe that is a third comment during argument that Counsel
has made concerning my client's right not to testify; and by repeating the fact that
they cannot consider his failure to testify, I think he is just ringing the bell louder
and louder each time. I ask the Court to instruct the Jury to disregard that
statement and ask for a mistrial.


MR. BRADLEY: Well, I'll clarify that the wife did, in fact, testify that he was
sorry, (1) and I'll clarify that. But I'm not -- I certainly haven't made any comment
on his failure to testify.


MR. BARRERA: I ask the Court to rule --


 THE COURT: What?


MR. BARRERA: Rule on my objection and my request for a mistrial.


 THE COURT: I'm going to instruct them not to consider that last
remark of Counsel. Is that the only request you have?


MR. BARRERA: I'm asking for a mistrial to be declared.


 THE COURT: That Motion will be denied.



(emphasis added).

 After another discussion at the bench, the trial court merely instructed the jury "not
to regard the last statement of the Prosecutor for any purpose."

 It is basic and fundamental law in this State that the failure of an accused in a
criminal case to testify may not be the subject of comment by the prosecution for such comment
is in violation of the privilege against self-incrimination contained in the Fifth Amendment to the
United States Constitution made applicable to the states by the Fourteenth Amendment and in
Article I, section 10 of the Texas Constitution. Griffin v. California, 380 U.S. 609 (1965); Allen
v. State, 693 S.W.2d 380, 381 (Tex. Crim. App. 1984); Bird v. State, 527 S.W.2d 891, 893
(Tex. Crim. App. 1975). Moreover, such a comment also a violates a mandatory Texas statute. 
Tex. Code Crim. Proc. Ann. art. 38.08 (West 1979); Montoya v. State, 744 S.W.2d 15, 34 (Tex.
Crim. App. 1987), cert. denied, 487 U.S. 1227 (1988).

 In Caldwell v. State, 818 S.W.2d 790 (Tex. Crim. App. 1991), cert. denied, 112
S.Ct. 1684 (1992), the Court of Criminal Appeals stated:



It is now well settled in this State that for the argument or comment of the
prosecuting attorney to offend against Art. 38.08, supra, the language used must
be looked to from the standpoint of the jury, and the implication that the language
used had reference to the accused's failure to testify must be a necessary one. It
is not sufficient that the language used might be construed as an implied or indirect
allusion thereto. The test employed is whether the language used was manifestly
intended or was of such character that the jury would naturally and necessarily take
it to be a comment on the accused's failure to testify. Of course, in applying this
test, the facts and circumstances of each case must be analyzed to determine
whether the language used was of such character.



Id. at 800 (quoting Dickinson v. State, 685 S.W.2d 320, 323 (Tex. Crim. App. 1984)).

 Further, if the remark called the jury's attention to the absence of evidence that
only testimony from the appellant could supply, the conviction is subject to being reversed. See
Madden v. State, 799 S.W.2d 683, 699 (Tex. Crim. App. 1990), cert. denied, 111 S.Ct. 902
(1991); Meyer v. State, 573 S.W.2d 19, 21 (Tex. Crim. App. 1978).

 In applying the above-mentioned standard, the objectionable comments must be
analyzed from the standpoint of the jury. The privilege against self-incrimination is as applicable
to the penalty stage of a bifurcated trial as to the guilt/innocence stage. Montoya, 744 S.W.2d
at 34; Brown v. State, 617 S.W.2d 234, 237 (Tex. Crim. App. 1981). It is likewise applicable
when a defendant enters a plea of guilty to a felony charge before a jury. (2)

 The prosecutor first told the jury that if it believed appellant's wife, appellant had
"created a veil of silence that is not going to be broken." After the objection was overruled, the
prosecutor was permitted to clarify his remarks. In doing so, the prosecutor explained that if
appellant was silent with his own wife about the offense charged, "it's because he knows he's got
something very, very valuable to protect and breaking that silence is the worst thing he could do." 
The prosecutor then suggested that appellant's wife was not telling the truth and was "going to
continue that veil of silence." The jury was then told that neither the appellant nor his wife were
"willing to expose people beyond themselves for the guilt that they have, for whatever reason." 
The jurors were requested not to give appellant any credit for pleading guilty because the plea was
"not out of any true sense of cooperation. There's no evidence that he did it out of remorse."

 "Testimony as to contrition or remorse can only come from the accused, and when
offered by witnesses other than the accused himself, is inadmissible." Swallow v. State, 829
S.W.2d 223, 225 (Tex. Crim. App. 1992). In Caldwell, 818 S.W.2d at 800, the court pointed
out that when the defendant has invoked his privilege against self-incrimination, a prosecutorial
comment concerning his nontestimonial in-court demeanor would be a manifest violation of that
right. "This is true because the comment directly focuses the jury's attention on the defendant's
personal feelings of remorse--evidence that the defendant can only supply through his own
testimony--which in turn, necessarily implicates the defendant's failure to testify." Id.; see also
Dickinson, 685 S.W.2d at 324-25. Similarly, other cases have condemned prosecutorial
comments directed at a non-testifying defendant's want of remorse and have reversed the
convictions. See Owen v. State, 656 S.W.2d 458 (Tex. Crim. App. 1983); Johnson v. State, 611
S.W.2d 649 (Tex. Crim. App. 1981); Litaker v. State, 784 S.W.2d 739 (Tex. App.--San Antonio
1990, pet. ref'd).

 We believe the jury would naturally and necessarily have taken the prosecutor's
remarks in this cause as a comment on the failure of the appellant himself to express remorse at
the unitary trial on the issue of punishment. The jury was told not to give appellant any credit in
the determination of punishment merely because he had pleaded guilty because there was "no
evidence he did it out of remorse." The inference was clearly made that appellant had not
revealed others who were involved in the offense, and that he and his wife were continuing a veil
of silence which he had originally created.

 A prosecutor, though free to strike hard blows in jury argument, is not at liberty
to strike foul blows, directly or indirectly. See Jackson v. State, 529 S.W.2d 544, 546 (Tex.
Crim. App. 1975). In the instant case, the prosecutor ignored the warning signs and continued
to skate on thin ice. Any responsibility for a reversal must rest solely upon the prosecuting
attorney. Lankford v. State, 239 S.W.2d 394, 395 (Tex. Crim. App. 1951).

 The prohibition against a comment on an accused's failure to testify is mandatory
and the adverse effect of any reference to such failure is not generally cured by an instruction to
disregard. Montoya, 744 S.W.2d at 37; Gardner v. State, 730 S.W.2d 675, 700 n.13 (Tex. Crim.
App.), cert. denied, 484 U.S. 905 (1987); Lopez v. State, 793 S.W.2d 738, 741 (Tex.
App.--Austin 1990), pet. dism'd, 810 S.W.2d 401 (Tex. Crim. App. 1991). (3) This is particularly
true where there is a direct comment on the accused's failure to testify, or where an indirect
comment calls for evidence that only the defendant personally is in position to offer. Montoya,
744 S.W.2d at 37. The comment in the instant case clearly falls within that category, and the
somewhat belated instruction to disregard the "last" statement of the prosecution in any regard was
not sufficient to cure the prejudicial error of the improper comment.

 To determine if improper jury argument is harmless error, the proper standard for
review is whether there is a reasonable possibility that the argument complained of might have
contributed to the defendant's conviction or punishment in light of the entire record from the trial
court. See Tex. R. App. P. 81(b)(2); Madden, 799 S.W.2d at 700; Orona v. State, 791 S.W.2d
125, 130 (Tex. Crim. App. 1990); Harris v. State, 790 S.W.2d 568, 586 (Tex. Crim. App.
1989). The question in the instant case is, of course, limited to whether the improper argument
might have contributed to the punishment assessed.

 We are not governed in applying this standard by the existence of overwhelming
guilt, but we must calculate as much as possible the probable impact of the error on the jury,
examine the source and nature of the error, the emphasis placed by the State upon the error and
its probable collateral implications including whether declaring the error harmless would
encourage the State to repeat it with impunity. By employing the foregoing standard, we cannot
conclude that this error in jury argument was harmless beyond a reasonable doubt. The jury
assessed appellant's punishment at seventy-five years' imprisonment and the maximum fine of one
hundred thousand dollars. We are unable to say that the argument did not contribute to the
punishment assessed. Appellant's point of error is sustained.

 The judgment of conviction is reversed and the cause is remanded.



 

 John F. Onion, Jr., Justice

[Before Justices Powers, Kidd and Onion*]

Reversed and Remanded

Filed: March 10, 1993

[Do Not Publish]




* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1988).
1. The State candidly admits that the prosecutor misstated the evidence. The wife did not
testify that appellant was sorry for having committed the offense charged. The State notes that
appellant did not object on this basis, and that such misstatement itself would not have resulted
in reversible error. See Phillips v. State, 701 S.W.2d 875, 892 (Tex. Crim. App. 1985), cert.
denied, 477 U.S. 909 (1986); see also Miniel v. State, 831 S.W.2d 310, 324 (Tex. Crim. App.
1992).
2. A plea of guilty to a felony charge entered before a jury admits the existence of all facts
necessary to establish guilt. The presumption of innocence does not obtain under the plea and
there is no issue of justification involved. In such cases, the introduction of testimony by the State
is to enable the jurors to intelligently exercise the discretion which the law vests in them touching
the penalty to be assessed. Holland v. State, 761 S.W.2d 307, 312-13 (Tex. Crim. App. 1988);
Cumbo v. State, 760 S.W.2d 351, 352 n.2 (Tex. Crim. App. 1988); Wilkerson v. State, 736
S.W.2d 656, 659 (Tex. Crim. App. 1987); Darden v. State, 430 S.W.2d 494, 495 (Tex. Crim.
App. 1968). The issue, then, before a jury on a guilty plea in a felony is that of punishment. 
Wilkerson, 736 S.W.2d at 659. And a plea of guilty to a felony proceeding is a unitary trial, not
a bifurcated one. Id.; Frame v. State, 615 S.W.2d 766, 767 n.1. This procedure was followed
in the instant case.
3. Cf., however, Caldwell, 818 S.W.2d at 801; Willis v. State, 785 S.W.2d 378, 385-86 (Tex.
Crim. App. 1989); Bower v. State, 769 S.W.2d 887, 907 (Tex. Crim. App.), cert. denied, 492
U.S. 927 (1989); Davis v. State, 645 S.W.2d 817, 819 (Tex. Crim.App. 1983).